## HALE vs. DANFORTH.

EVIDENCE: *When wife incompetent witness for husband.*

A wife, requested by her husband to call into their house the indorser of a note held by the husband, "and ask him whether he was going to pay the note," is not the husband's *agent* in such a sense as to be a competent witness for him to show admissions made to her by the indorser; still less to show a *contract* made by such indorser and herself (acting for her husband), which would render the former liable on the note without demand of payment from the maker.

APPEAL from the Circuit Court for *Winnebago* County. The action was against defendant as indorser of a promissory

note made by one Finney. Payment of the note was not demanded of the maker at maturity; but the complaint contains averments of fact to excuse such demand, one of which is to the effect that on the day before the note matured, plaintiff, by his duly authorized agent, Mary Hale, his wife, presented the note in suit to defendant, who, with full knowledge of all the circumstances, agreed to pay it when called upon to do so. A similar conversation between the plaintiff in person and the defendant on the next day is set out in the complaint; and it is alleged as the result of such last mentioned conversation, that plaintiff agreed with defendant " to let the note stand unpaid for a little while after the same became due."

The only testimony given on the trial in regard to the alleged agency of plaintiff's wife, and the extent thereof, was given by the plaintiff, and is as follows: " Q. Prior to this 28th day of January, when you saw *Danforth*, did you authorize any other person to see him concerning the payment of this note? A. I told my wife to. Q. What did you tell her to do? A. I told her to call him in and ask him if he was going to pay the note."

Mrs. Hale was called as a witness on behalf of her husband, the plaintiff, and was allowed, against defendant's objection, to testify as follows: " I called *Mr. Danforth* into our house on Pearl street, on Tuesday morning, and notified him that the note was out, and asked him if he would pay it. He told me that he would, any time when we wanted the money; but if we did not want it then, he would like to use it; and if we wanted it before the time set for him to keep it, that he would get it then; and if we would let him have it for five or six months, that we should have our pay at the end of that time, but we should certainly have it. He would go to the bank that day and get it, if we wanted it. *I told him that we would let him have it; that he might keep it.* He repeated what he said, that we should have it any time we called for it; he would certainly pay it; repeating it a number of times.

This was on the 27th day of January, 1874." On her cross-examination, she said: "This was on Tuesday the 27th; I know it was; I looked in the almanac. The note was in my son's trunk in the house. The trunk was locked; my son had the key. He worked in the planing mill." Plaintiff also testified to the truth of the averment as to conversation with defendant on January 28th. Defendant denied both averments, and introduced testimony tending to show that they were false.

The circuit judge instructed the jury, amongst other things, that if plaintiff agreed with defendant to extend the time of payment upon condition that defendant would pay the note at some future time, it excused the want of demand of payment of the maker at the maturity of the note, and notice of nonpayment to the defendant, which but for such agreement would have been necessary to charge him. He also told the jury that Mrs. Hale testified to such an agreement.

Verdict in plaintiff's favor, for the amount due on the note; and from a judgment on the verdict, defendant appealed.

A brief was filed for the appellant, signed by *Felker & Cleveland*, and one for the respondent, signed by *Jackson & Halsey;* and the cause was argued orally by *W. B. Felker* and *H. B. Jackson.*

For the appellant it was argued, that the wife was not a competent witness for her husband. She was not authorized to act as his agent, but merely to ask *Danforth* "if he was going to pay." To procure a waiver of demand and notice of protest, was beyond the scope of her authority as proven. She was not empowered to present the note, for she did not have it. A husband can not throw the mantle of agency over his wife's shoulders, and send her forth as a detective to hunt up evidence for him, with which to maintain an action. If such were the law, "it would prove a temptation to perjury in many cases, too great for human virtue to resist." *Schœffler v. The State*, 3 Wis., 844.

For the respondent, the case of *Menk v. Steinfort*, 39 Wis., 370, was cited to the point that Mrs. Hale was competent to testify to her acts as agent for her husband.

Lyon, J.   In *Birdsall v. Dunn*, 16 Wis., 235, it was held that a wife, acting as the agent of her husband, is a competent witness for him as to all business transacted by her within the scope of her employment.

If Mrs. Hale was a competent witness for her husband in the present case, it is because her testimony is within the rule there laid down.   Does the rule extend to this case?   Mrs. Hale was authorized merely to ask the defendant if he was going to pay the note in suit.   There her authority ceased. The most that she could do within the scope of her employment was, to put the question to the defendant, and, perhaps, to repeat his answer to her husband.   If it can be held that she was in any proper sense the agent of the plaintiff, it is manifest that she could only be allowed to testify to the asking of the question and the defendant's answer thereto. Hence, it was error to permit her to testify to the making of a contract with the defendant, in behalf of her husband, the effect of which would be to render the defendant liable on the note without due demand and notice.   Inasmuch as the verdict may have rested upon this unauthorized testimony of Mrs. Hale, the error is material, and fatal to the judgment.

But we are of the opinion that Mrs. Hale was not the agent of her husband in a sense which renders her a competent witness in the case for any purpose.   Had she been sent to notify the defendant that payment had been demanded of the maker of the note, at maturity, or to make an agreement with the defendant for an extension of time of payment, these would have been business transactions in which an agent might well be employed, and no doubt she would have been a competent witness for her husband to testify to such notice or agreement. Not so, however, in the present case.   Mrs. Hale was clothed

by her husband with no authority to act for and bind him in any matter whatever. She was merely constituted the bearer of an interrogatory, a service which includes none of the essential elements, but only the mere shadow of an agency. To hold that she was the agent of her husband, and therefore a competent witness for him, would open the door to gross abuse. If anything is well settled in the law, it is settled to be against a sound public policy to permit husband and wife to testify against each other. See cases cited in Vilas & Bryant's notes to *Birdsall v. Dunn, supra.* Yet if a man may send his wife to converse with his adversary, and then, on pretense that she is his agent, use her as a witness to prove admissions drawn by her from such adversary, the rule would be greatly weakened, if not broken down entirely. To permit such testimony under such a pretense, would be a fraud on the law, which the courts should not tolerate.

Other errors are alleged, but we do not deem it necessary to consider them on this appeal.

*By the Court.* — Judgment reversed, and a new trial awarded.