## ERHARDT, Collector, v. BALLIN et al.

### (Circuit Court of Appeals, Second Circuit. May 23, 1893.)

1. CUSTOMS DUTIES—CLASSIFICATION—EXPERTS—COMPETENCY.

In an action to recover duties illegally exacted, where the issue was whether certain articles were within the commercial designation "hemmed handkerchiefs," defendant offered a witness who for many years had been engaged in the manufacture of cotton handkerchiefs and articles similar to those in question, but who had never bought or sold imported handkerchiefs, or been present when they were bought or sold. *Held*, that he was nevertheless competent to testify by what name the imported articles in question were known at the time the tariff act was passed, for his want of personal experience in handling the imported goods only affects the weight of his testimony.

2. SAME.

Though one of the witnesses was at the time of the trial engaged in the handkerchief business, and had been prior to 1881, it was proper to exclude the question what was included in the term "hemmed handkerchiefs" in 1883, where it was shown that from 1881 to 1885 he was wholly engaged in a different business.

In Error to the Circuit Court of the United States for the Southern District of New York.

At Law. Action by William Ballin and others against Joel Erhardt, as collector of the port of New York, to recover duties paid under protest. There was judgment for plaintiffs, and defendant brought error. Reversed.

Chas. D. Baker, Asst. U. S. Atty., for plaintiff in error.
Everit Brown, for defendants in error.

Before WALLACE and SHIPMAN, Circuit Judges, and WHEELER, District Judge.

WALLACE, Circuit Judge. The plaintiff in error was defendant in the court below. The suit was brought against him to recover duties alleged to have been illegally exacted by him, as collector of the port of New York, upon the importation by the plaintiffs, during the year 1889, of certain cotton goods, which goods he classified as "hemmed handkerchiefs," dutiable at 40 per cent. ad valorem, under one of the clauses of Schedule I of the tariff act of March 3, 1883. The plaintiffs insisted that the importations were articles which at the date of the passage of the act were commercially known as "mufflers," and not "handkerchiefs," and as such should have been classified under another clause of the same schedule, as "manufactures of cotton not specially enumerated," and subjected to duty at only 35 per cent. ad valorem. The issue litigated upon the trial was whether the imported articles were "hemmed handkerchiefs," according to the commercial understanding of the term prevailing in this country at the time of the passage of the tariff act. The plaintiffs gave testimony to show that they were not, but that they were always bought and sold as "mufflers," and that they were used for neckwear only, and that in commercial signification the term "handkerchief" did not include

articles other than those designed for use in wiping the face or hands. To controvert this testimony the defendant offered to prove by witnesses that articles like the importations were bought and sold as hemmed handkerchiefs, and that the trade meaning of the term "handkerchief" was identical with the definition of the lexicographers, and included "a cloth to be worn about the neck; a neckerchief." The testimony thus offered by the defendant was excluded by the trial judge upon the objection of the plaintiffs that the witnesses had not been shown competent to testify to the matter, and he thereafter directed a verdict for the plaintiffs. The exceptions to these rulings present the questions for consideration upon this writ of error.

We think the testimony offered by the witness Hermann was erroneously excluded. He had been a manufacturer and seller at wholesale of handkerchiefs, including every variety of cotton handkerchiefs, and articles similar to those in controversy, for 25 years, at the city of New York. He was asked the question: "By what name were the articles before you [specimens of the importations of the plaintiffs] known in trade and commerce in this country in 1883?" Being cross-examined to test his competency to answer the question, he stated that he had never bought or sold any imported handkerchiefs, or been present when any were bought or sold, and that all the handkerchiefs he had sold had been, with a few exceptions, his own manufacture. Thereupon the judge sustained the objection to the competency of the witness. It is insisted that as the witness had shown that he did not know what name was given to the articles by importers, and was not familiar with the import trade in the article, he was not competent to testify.

It was said in Elliott v. Swartwout, 10 Pet. 137, that the laws imposing duties on the importations of goods are intended for practical use and application by men engaged in commerce, and hence it had become a settled rule, in the interpretation of statutes of this description, to construe the language adopted by the legislature, and particularly in the denomination of articles, according to the commercial understanding of the terms used. The court observed that congress applied its attention to the description of articles as they derived their appellations in our own markets, "in our domestic as well as our foreign traffic." Since that adjudication it has frequently been said by the courts that the commercial designation of an article "among traders and importers," when clearly established, fixes its character for the purposes of the tariff laws. But we are not aware of any adjudication in which it has ever been declared that the commercial meaning is to be ascertained by a resort solely to the understanding of importers. Tariff laws are addressed, not to importers exclusively, but to the whole commercial community; to the manufacturer, the jobber, the retail merchant, the trader of every description, as well as the importer. The manufacturer, who sells only to the jobber, has a narrower opportunity than the jobber to become generally familiar with the commercial designation of the articles; but so, also, has the impor-

ter. The jobber or wholesale merchant who buys of the manufacturer and the importer, and sells to the retailer, is engaged in trade with all the more prominent classes of the commercial community. In the case of Dieckerhoff v. Robertson, 44 Fed. Rep. 160, it was said:

"In the case of a manufacturer who has a factory and makes goods for himself, and puts his own name upon them, and advertises them, his experience is one-sided, because any one who goes to his factory goes to buy the goods which he himself has made; but a man who is a buyer, and goes to different importers and different manufacturers, and buys from them, necessarily, in the transaction of that business, acquires a knowledge of general trade designation."

The same observations apply measurably to the importer. The witness Hermann, who had dealt with jobbers for 25 years, presumably must have known what was the commercial designation among them of the articles he had sold them. It may be reasonably assumed that the name by which they were known among this large class of traders was the name by which they were generally designated by traders in this country. If the witness did not know the commercial designation prevailing among importers, that circumstance only went to the value of his testimony, and to the weight to be given to it by the jury.

Whether a witness is shown to be qualified to testify to any matter of opinion is always a preliminary question for the judge presiding at the trial, and his decision thereon is conclusive, unless it appears to have been based upon some erroneous fact of legal principles, or not justified by the state of the evidence at the time; but, if it fairly appears upon the facts shown that the witness is competent to give an opinion, it is not for the judge to pass upon its value, but is for the jury to determine how much weight is to be given to it. Nunes v. Perry, 113 Mass. 274; Bedell v. Railroad Co., 44 N. Y. 367; Spring Co. v. Edgar, 99 U. S. 645; Slocovich v. Insurance Co., 108 N. Y. 62, 14 N. E. Rep. 802. The witness had a degree of special familiarity with the subject of the inquiry addressed to him, acquired by observation and experience, which entitled him to speak as an expert.

The witness Leibermann had been a wholesale dealer in handkerchiefs in this country for about 20 years, but between the years 1881 and 1885 had gone out of the handkerchief business, and was engaged in that of selling ladies' neckwear. He was asked, in substance, whether the term "handkerchiefs," in the sense in which it was used in trade and commerce in this country in 1883, included neckerchiefs, or articles other than those intended for use in wiping the face or hands. His testimony was excluded upon the observation by the trial judge that, although he was competent to testify as to the trade meaning of the term in 1881, he could not know how the trade name may have changed between then and 1883. It is undoubtedly the rule that the commercial designation of an article obtaining at the time of the passage of the tariff act is the designation which congress is presumed to have had in mind; but this rule is not a rule of evidence by which the proof of commercial designation is required to be confined to the precise date of the act. A commer-

cial designation prevailing shortly before and shortly after the date of the passage of a tariff act will be presumed to have been the designation prevailing at the time. The witness was sufficiently informed to testify as to the trade meaning of the terms in question during a period of several years prior and subsequent to the date of the act. If he had been asked to give his opinion as to its meaning at those times, we entertain no doubt that he would have been entitled to do so. But this was not the question asked him. He was asked to state what the meaning was at a specific time, when, as he had already stated, he did not know what its meaning was at that time. In the form in which the question was put, we think it was objectionable, and the ruling of the trial judge was correct.

It is apparent that the court directed a verdict for the plaintiffs because there was no evidence to controvert the testimony introduced by them showing that the importations were commercially known in this country, at the date af the tariff act, as "mufflers," and not as "hemmed handkerchiefs." Thus, the exclusion of the evidence offered by the defendant, which, if it had been received, would have met the evidence introduced by the plaintiffs, and presented a question of fact for the jury, was fatal to the defense. As the exclusion was erroneous, the ruling must lead to a reversal of the judgment. The judgment is reversed.