## ATCHISON, T. & S. F. RY. CO. v. BAKER.

No. 2208.  Opinion Filed February 18, 1913.

(130 Pac. 577.)

1. **TRIAL—Reception of Evidence—Waiver of Objections.** Where evidence incompetent in chief is erronously admitted, but later the same evidence becomes competent for the purpose of contradicting the witness, and is properly admitted for that purpose, it would have been the duty of the court, upon request so to do, to have limited the effect of the evidence within its proper scope; but if no such request is made, nor is the court's attention called to this phase of the matter, it will be considered as waived.

2. **EVIDENCE—Evidence at Former Trial.** The testimony of a witness given at a former trial between the same parties involving the same subject-matter with the opportunity for cross-examination, and taken down by the official stenographer and preserved by bill of exception on appeal, is admissable, if otherwise unob-

jectional, in a second trial of the same cause, where the witness resides in another state and is not present at the second trial.

3. **APPEAL AND ERROR—Evidence—Review—Competency of Expert.** The amount of knowledge which a witness must possess before a party is entitled to his opinion as an expert is a matter which must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless clearly erroreous.

4. **RAILROADS—Accident at Crossing—Question for Jury.** Where the evidence shows that a railway engineer discovered a man driving a wagon across a railway track at a crossing in front of an on-coming train, it was the duty of the engineer to use ordinary care to prevent injuring the man, after his presence and peril became known; and, where there is conflicting evidence as to whether such care was used, it was proper to submit the question to the jury.

(Syllabus by Brewer, C.)

*Error from the District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by Ed Baker against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Cottingham & Bledsoe,* for plaintiff in error.
*W. H. Kornegay,* for defendant in error.

Opinion by BREWER, C. This suit for personal injuries was originally filed and tried in the United States Court for the Northern District of Indian Territory resulting in a judgment for the plaintiff. An appeal was prosecuted to the Court of Appeals of Indian Territory; an opinion being rendered by the said court reversing the judgment of the trial court on the ground that the defendant railway company should have had an instructed verdict in its favor. This opinion is voluminous, states a greater part of the material evidence, and is reported in 104 S. W. beginning at page 1182 and concluding on page 1197. A petition for rehearing was filed in the case in the court rendering the decision and was pending undisposed of at the time of the erection of the state of Oklahoma. This court, as successor to the Court of Appeals of Indian Territory, passed upon the

petition for rehearing, concurring in most of the views of the Court of Appeals and deciding that the case should be reversed, but held that the defendant railway company was not entitled, under the evidence disclosed in the record, to an instructed verdict in its favor, upon one particular phase of the case, which will fully appear herein in a quotation from the opinion which is reported in 21 Okla. commencing at page 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825. After stating that under the evidence the case should have been submitted to the jury under the doctrine of "the last clear chance," the court proceeds as follows:

"The Court of Appeals and all parties to this suit concede that the above doctrine was in force in the Indian Territory at the time this cause was tried; but counsel for plaintiff in error and the Court of Appeals in its opinion insist that there was no evidence reasonably tending to show a want of ordinary care on the part of the plaintiff in error after the dangerous situation of defendant in error was discovered. Mr. Justice Townsend in his opinion, *supra,* says: 'There was not a particle of evidence to support the theory that the train could have been stopped before reaching the crossing and the accident avoided, and to submit to the jury a theory not supported by any evidence was error.' The evidence of the engineer is to the effect that when he was 300 or 400 feet from the crossing he saw the defendant in error acting as though he was deliberately approaching the crossing. The following is taken from his evidence as it appears in the record: 'Q. Where were you with reference to this crossing—about how far were you north of the crossing when you first discovered Mr. Baker's team, according to your best judgment? A. We must have been 300 or 400 feet. Q. Where was Baker and his team with reference to the crossing when you discovered him? A. Him and his team and wagon and all was inside of the right of way. Q. Well, where did Mr. Baker seem to be going, driving along? A. He seemed to be deliberately driving over the crossing.' There is no room to doubt that the engineer, when he first discovered the defendant in error, got the impression from his conduct that he was going to drive upon the railroad track ahead of his train. The engineer does not pretend that he was in any way deceived by appearances, but testified that he acted upon the impression that the defendant in error was deliberately crossing the track, and he testified that he acted on this impression and did all he reason-

ably could to stop his train and avoid the injury. If this evidence was uncontradicted, the Court of Appeals would have been right in its conclusion that a verdict should have been directed. But to our mind there was evidence reasonably tending to contradict the evidence of the engineer on this point. This being so, it was proper to submit to the jury the question as to whether the plaintiff in error, after discovering the dangerous situation of the defendant in error, exercised reasonable care and prudence to avoid the injury. The engineer further testified on cross-examination that the train was made up of one combined coach and baggage car and one day coach; that the coaches were probably 70 feet long. Mr. T. C. Conner, express messenger and baggageman on the train, called as a witness on behalf of plaintiff in error, testified, in part, as follows: 'Q. Now, when the engineer put on the emergency brakes or the air, how long was that before he stopped? A. That puts on all the brakes, and the train slacks. I judge it would stop within the length of the train. There were only two coaches on. Q. That is your best judgment? A. Yes, sir.' The answer to the first question may not be entirely responsive; but it was evidently given with deliberation after making a mental calculation to determine how quickly this train could, under the circumstances, be stopped, and his best judgment was that it could be stopped within the length of the train, which would not exceed 250 feet at the most. The witness was testifying in behalf of the railway company, and was telling of the effort the engineer made to stop the train. This evidence is not mentioned by counsel for defendant in error in his brief; but it was earnestly urged upon the attention of the court by oral argument. We believe it was sufficient to send the case to the jury on the question of the exercise of reasonable care on the part of plaintiff in error after it discovered the dangerous situation of defendant in error. Admitting the contributory negligence of the defendant in error may have had something to do in causing the injury, yet it would have been error for the court below to have directed a verdict for the plaintiff in error with this evidence in the record."

The opinion concludes:

"With the foregoing modifications, we believe the opinion of the learned Court of Appeals states the law of the case."

A reversal and remand for a new trial was ordered. If the evidence at the last trial was, in all substantial respects, the

same as at the first trial, then the law of the case is settled in the former opinions. In *Metropolitan Ry. Co. v. Fonville*, 36 Okla. 76, 125 Pac. 1125, it is said:

"It is well settled by both reason and authority that a decision of an appellate court upon questions of law must control the case, as to points decided, at all subsequent stages. And a decision of the Supreme Court of the Territory of Oklahoma is the law of the case at subsequent stages, even after statehood. *Oklahoma City Electric Gas & Power Co. v. Baumhoff*, 21 Okla. 503, 96 Pac. 758; *Harding v. Gillett*, 25 Okla. 199, 107 Pac. 665, and authorities cited in these cases. This rule is subject to the qualification that an appellate court may review and reverse a former decision in the same case, where adherence to the former decision would result in gross and manifest injustice. *Oklahoma City Electric Gas & Power Co. v. Baumhoff*, 21 Okla. 503, 96 Pac. 758."

Three propositions need consideration in this case: (1) Alleged error in the admission of certain testimony. (2) The sufficiency of the evidence to take the case to the jury. (3) Alleged error in giving certain instructions and in refusing others.

1. At the trial the plaintiff was allowed to introduce from the record of the former trial the testimony of defendant's engineer in charge of the train that struck plaintiff at the crossing, on the points of how far the train was away when the engineer first saw plaintiff, and that plaintiff was very close to the track and appeared to be "deliberately driving over the crossing." This was objected to on the ground that the witness (engineer) was present and could be called as a witness. The plaintiff contends, and the trial court was evidently of the opinion, that, these statements being the details of certain specific vital facts regarding the situation of the parties at the time of the injury, brought out by the railway company intentionally and designedly for the purpose of proving the contributory negligence of plaintiff, they stood in the nature of admissions—the assertion of specific facts—by defendant, thus making the evidence competent on that theory. Some authority is cited to support this view (2 Wigmore on Evidence, sec. 1075, and note); but inasmuch as the engineer was later called as a witness by the defendant, and

this same evidence was later properly introduced to contradict the witness, the question of whether it was competent in the first instance loses much of its importance. It may be admitted that the evidence was incompetent in chief, yet it was competent for impeaching purposes, and was properly introduced without objection for that purpose. This, of course, does not make the evidence competent as substantive proof in the case, and the jury could not so consider it; if the defendant had asked an instruction limiting the effect of this evidence and it had been refused, a very serious question would have been presented, but such instruction was not requested, and we think that the error, if error it was, should be held to have been waived.

Complaint is also made because of the admission in evidence of the testimony given at the former trial by the witness Connor. The objection urged seems to go to the point that there was not shown sufficient diligence in procuring the attendance of the witness to justify the use of his former testimony. This witness was an express messenger on defendant's train at the time of the injury. He was produced at the first trial by defendant and testified in its defense. This testimony shows that he resided at Baxter Springs, Kan. The testimony was taken in shorthand, transcribed into longhand, and printed in the certified record, made in the former appeal of this case; and certain parts of his testimony, and that of defendant's engineer, were specifically set out in the former opinion of this court, as raising, when considered together, a question for the jury to pass upon. So far as the record shows, this witness is a non-resident of the state, and not subject to the court's process. He was produced by defendant at the first trial, although he lived in another state at the time. He was not present at this trial. His deposition could have been taken perhaps, but he had been, before the court once and had been fully examined by both sides. If he was a credible man, and defendant had vouched for this when it used him, he would have testified a second time substantially as he did before. His evidence was highly material; considering the law of the case as having been settled in the

former opinions, this evidence was pivotal; without it, plaintiff's case failed. The evidence was admissible under the rule announced by the Supreme Court of Arkansas.

In *Clinton v. Estes,* 20 Ark 216, a civil case, the court says:

"Proof of what a witness swore upon a former trial is admissible in evidence on a subsequent trial of the same cause, if he be a non-resident, and out of the jurisdiction of the court; but if his place of residence be known, and his testimony can be taken under a commission, it is within the discretion of the court to issue a commission to take his testimony, or admit proof of what he formerly testified, and the decision of the court admitting the proof must be regarded as conclusive unless there be shown gross abuse of such discretion."

In *Vaughan v. State,* 58 Ark. 370, 24 S. W. 889, which was a capital criminal case, it is said:

"The settled law of this state is that where the adverse witness is dead, beyond the jurisdiction of the court, or, upon diligent inquiry, cannot be found, what such witness testified on a former occasion on the same issue, and between the same parties, may be given in evidence, provided the accused was present having the right of cross-examination."

To sustain the text the court cites *Pope v. State,* 22 Ark. 372; *Hurley v. State,* 29 Ark. 17; *Shackelford v. State,* 33 Ark. 539; *Green v. State,* 38 Ark 304; *Dolan v. State,* 40 Ark. 461; *Sneed v. State,* 47 Ark. 180, 1 S. W. 68; 1 Greenleaf on Evidence, sec. 163.

In 16 Cyc. p. 1088, the rule is stated thus:

"Facts may be established by evidence thereof given on a former trial, provided the court is satisfied: (1) That the party against whom the evidence is offered, or his privy, was a party on the former trial; (2) that the issue is substantially the same in the two cases; (3) that the witness who proposes to testify to the former evidence is able to state it with satisfactory correctness; and (4) that a sufficient reason is shown why the original witness is not produced. The first three of these conditions render the reported evidence relevant; the fourth is necessary to justify the court in receiving it. Under these conditions the evidence is admissible from necessity even if there is other evidence to the same effect; and the admission of the evidence

in crimnial cases does not contravene a code provision that on a new trial in such cases 'all the testimony must be produced anew.' "

In *A., T. & S. F. Ry. Co. v. Osborn,* 64 Kan. 187, 67 Pac. 547, 91 Am. St. Rep. 189, the syllabus prepared by the Supreme Court of Kansas is:

"The testimony of a witness given at a former trial, and which was taken and preserved by an official stenographer of the court as the law directs, is admissible in evidence where it appears that the witness is out of the jurisdiction of the court and beyond the reach of its process."

In the case of *Omaha St. Ry. Co. v. Elkins,* reported in 39 Neb. 480, 58 N. W. 164, the syllabus prepared by the court is as follows:

"Where a witness is shown to be absent from the state, his testimony given at a former trial of the case is admissible in the evidence if otherwise unobjectionable."

See, also, *Oklahoma Ry. Co. v. Boles,* 30 Okla. 764, 120 Pac. 1104. For a full discussion of this subject, see the numerous authorities cited in the cases quoted from. It has been held by the Supreme Court of the state of Arkansas that the question of whether a proper showing has been made, as to the absence of the witness, rests largely within the discretion of the trial court, and his action in the exercise of such discretion will not be reversed on appeal unless a gross abuse thereof is shown. *Vaughn v. State,* 58 Ark. 353, 24 S. W. 885; *Clinton v. Estes,* 20 Ark. 216.

The objection is also made to the testimony of the witness Connor that his evidence as to how quick and how short a distance the train would stop in was not competent, because it did not appear that he was qualified to give an opinion on the matter. The evidence shows that this man was running on the train as an express messenger; it is fairly inferable that he had been running as such on this road for some time, because he speaks of the engineer having "always whistled for that crossing," he was so familiar with the road that he "could tell where he was without looking out of the car," etc. He states what would hap-

pen when "the emergency brakes" and "when the air" was put on, etc,; says the train would slide, etc. Then makes the statement as to stopping of the train of two coaches in its length. When this testimony was given at the first trial no objection was made that the witness was not qualified to give an opinion— he was defendant's witness then—and at the last trial the court, on the objection being made, held that sufficient knowledge had been shown to admit the evidence. This question, under the rule of decision in the federal courts, is left largely to the discretion of the trial court. In *Chateaugay Ore & Iron Co. v. Blake,* 144 U. S. 476, 12 Sup. Ct. 731, 36 L. Ed. 510, it is said:

"The amount of knowledge which a witness must possess before a party is entitled to his opinion as an expert is a matter which must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous."

The same rule is stated in many other federal decisions. *Congress, etc., Spring Co. v. Edgar,* 99 U. S. 645, 25 L. Ed. 487. *Stillwater etc., Mfg. Co. v. Phelps,* 130 U. S. 520, 9 Sup. Ct. 601, 32 L. Ed. 1035; *Inland, etc., Coasting Co. v. Tolson,* 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; *Erhardt v. Ballin,* 55 Fed. 968, 5 C. C. A. 363; 8 Ency. P. & P. 750. Taking all the testimony of this witness, his line of work, his evident familiarity with train service and the movement of trains, we cannot say that the decision of the trial court to admit the evidence "was clearly wrong as a matter of law."

This brings us to consider whether, under the evidence as it now stands, the case should have been submitted to the jury. If the evidence of the engineer and Connor at this trial was identical with that given at the former trial, it would need no consideration, because it was held to raise a legitimate jury question in the former opinion. The evidence of Connor is the same. The evidence of the engineer is not in exact accord with his former testimony. Asked on the first trial how far he was away from the crossing when he discovered plaintiff, he replied:

"We must have been 300 or 400 feet. His team could not have been more than twenty feet from the track." Then, after stating that plaintiff was inside the right of way, he was asked what plaintiff appeared to be doing, and replied, "He seemed to be deliberately driving over the crossing." At the first trial, this evidence was introduced to show clearly and beyond the peradventure of a doubt that plaintiff was guilty of contributory negligence. At the last trial, perhaps because of the form of the questions, or the lapse of time, the testimony appears considerably diluted. The evidence on this point given at the last trial follows:

"Q. About how far were you from the crossing, Mr. Baker, when you first noticed some one approaching the track? A. Well, I would imagine, from the looks of things, I was about 300 or 400 feet, possibly that; somewhere along in the neighborhood of 300 or 400 feet. Q. When you first saw the object approaching the track, where was it with reference to the track? A. Well, he was on the west side approaching the track, I could not say how far, the team seemed to be pretty close in, and I thought it was the right of way fence, you know. * * * Q. Did you know that Mr. Baker, the plaintiff, was going to drive upon the track when you first saw him? A. I didn't know whether he was going to or not. Q. What would be your guess? A. It would be a natural presumption that he was not going to."

The cross-examination on this point is reproduced, as follows:

"Q. Mr. Baker, how far were you from the crossing when you first noticed Mr. Baker's team? A. I must have been about 400 feet. Q. Did you make that answer before? A. I don't remember now what I did answer. * * * A. Well, I must have answered it that way at that time. Q. Then wasn't this question put to you by the plaintiff's attorney at the other trial: 'Q. How far were they from the railroad when you first noticed them? A. Well, his team couldn't have been over twenty feet from the track.' Did you answer that? (Showing to witness the record.) A. Why, it's here; I must have answered it that way. Q. That is true, ain't it; ain't that so? A. Well, I expect it is. Q. And wasn't this question also put to you then: 'Q. You knew they were coming towards the

railroad and would probably come on it? A. Yes, sir.' (Showing to witness the record.) A. Yes, sir; I answered it that way, I reckon."

This testimony, when analyzed, amounts to this: The engineer saw the plaintiff inside the right of way, near the track, apparently driving across the crossing, when the train was 300 or 400 feet away; the train consisted of two coaches and an engine; its entire length is estimated at from 170 to 190 feet. Connor testified the train could be brought to a stop in its length (170 to 190) feet. In fact, the train did not stop until the rear, end was a considerable distance past the crossing. The engineer testified that, upon seeing the plaintiff approaching the crossing, he immediately did everything possible to bring the train to a stop. This conflicts with the evidence of Connor. If the train could have been stopped in 170 to 190 feet, this fact discredits the statement that all was immediately done, after discovering the plaintiff's peril, that could have been done, In the first trial the engineer had no doubt but that plaintiff was deliberately driving across the track in front of the approaching train. He does not deny this at the last trial, and admits he so testified at the first. At the last trial counsel refrained from asking the engineer "what plaintiff appeared to be doing," but asked him, "Did you know * * * plaintiff was going to drive on the track?" The answer was that the witness *"did not know."* Of course, he did not know. He was then asked, "what would be his guess." This gave the witness the chance to have answered as in the first trial, but the witness irresponsively answers that the presumption would be that he was not going to drive on the track. But when confronted with his former statements he takes nothing back, denies nothing, nor does he attempt to explain anything away. He in a way adopts his former answers. Taking all his testimony including the statement that when he saw plaintiff he immediately did all he could to bring his train to a stop, it seems clear that at the time the engineer thought from actions of plaintiff that he was, heedless of his danger, "deliberately

driving across the track in front of" the on-coming train. If so, regardless of plaintiff's contributory negligence, it became the duty of defendant, upon this situation presenting itself, to use ordinary care to prevent injuring plaintiff after his peril became known, as formerly held in this case. See former opinion, this case *supra,* and *Oklahoma City Ry. Co. v. Barkett,* 30 Okla. 28, 118 Pac. 350, and cases cited.

It only remains to examine the instruction submitting this question to the jury. On this phase of the case the jury was instructed as follows:

"The court instructs the jury that the rule is that, even if the defendant be shown to have been. guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident; yet the contributory negligence on his part would not exonerate the defendant and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence. Defendant claims that plaintiff in driving on the track was guilty of negligence which was the proximate cause of the injury, and evidence has been introduced showing that the engineer saw the plaintiff driving onto the track before the collision occurred. You are instructed that, even though you should find that plaintiff in driving on the track was guilty of negligence which contributed to his injury, this fact would not bar his recovery, if the engineer discovered his position and that he was in peril in time to avoid the collision, and after such discovery neglected to exercise reasonable care to avoid this collision and as result of his failure to exercise such care the collision accurred."

It appears to us that this instruction substantially states the law applicable to the facts.

The case should be affirmed.

By the Court: It is so ordered.