### McINTOSH et al. v. STATE.

No. 12602—Opinion Filed Jan. 29, 1924.

**1. Bail—Appearance Bond—Exoneration of Bondsmen by Surrender of Defendant.**

Where bail on a criminal bond procures a certified copy of the bond, and delivers same to the sheriff, whereupon the sheriff apprehends and arrests the defendant, and takes him to the sheriff's office, where the bondsmen are told that there is nothing more required of them, by the officer, and that he, the officer, will hold the prisoner, held, that such act constitutes a substantial compliance with the requirements of the law as provided by section 2926, Comp. Stat. 1921.

**2. Same.**

A certified copy of the bond in a criminal case delivered to the sheriff constitutes due process and authorizes the officer to apprehend and arrest the defendant, and when arrested and detained by the sheriff, the sheriff becomes the custodian of the defendant, and the bondsmen are exonerated from liability on the bond.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

Action by the State of Oklahoma against S. W. McIntosh, Robert Lee, and John Morrison to forfeit criminal bond. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

DeGraffenried & DeGraffenreid, Archibald Bonds, and Kelly Brown, for plaintiffs in error.

William A. Green, Co. Atty., and I. I. Lockowitz, Asst. Co. Atty., for defendant in error.

Opinion by JONES, C. This is an appeal taken by the plaintiffs in error from the district court of Muskogee county, Okla., from the order and judgment of said court denying the motion to set aside the forfeiture of a certain criminal appearance bond, wherein the state of Oklahoma was plaintiff and Redfield Richard was defendant. Prior to the institution of this proceeding, the case of the state against Richards was called for trial, and he failing to appear, a forfeiture of his bond was declared by the court; and the day following, and during the same term of court, plaintiffs in error appeared and interposed a motion asking that the forfeiture of the bond be set aside, and that they be declared exonerated from liability on the bond, and after hearing the same, the motion was denied by the court, and plaintiffs

in error appealed from said order and judgment · of the court. The undisputed facts are that plaintiffs in error, S. W. McIntosh, ·Robert Lee, and John Morrison, were bondsmen for the said Redfield Richards in a certain criminal case then pending in the district court of Muskogee county, and that in the latter part of July, 1920, the bondsmen feeling insecure and fearing that the defendant, Richards, was about to abscond, went to the sheriff's office in the city of Muskogee and inquired of the sheriff, J. D. Robbins, as to what steps were necessary in order to exonerate themselves on the bond. Whereupon the sheriff ·advised them that they should secure a certified copy of the bond from the court clerk. They immediately went to the court clerk's office and procured a certified copy of the bond, returned to the sheriff's office and delivered it to the sheriff, or some of the deputies in his office. They were then advised to be seated, that there would be an officer in, in a few minutes, who would make the arrest, and shortly thereafter Jack Headrick, one of the deputy sheriffs, appeared and secured the certified copy of the bond, and in company with McIntosh, one of the bondsmen, went out for the purpose of apprehending the defendant, Richards, and found him at the Midland Valley depot, and the deputy sheriff, Headrick, arrested him, and they returned to the sheriff's office, the bondsmen, McIntosh, accompanying them back to the sheriff's office, and on arriving there, they had a discussion as to what should be done in order that the bondsmen might be exonerated, and McIntosh was informed that the court was not in session, but the sheriff assured him that he would hold the prisoner, and that there was nothing more than he could do, whereupon he left the office; some time later in the day the deputy sheriff, Headrick, accompanied the defendant, Richard, down town and into the residence portion of the city for the purpose of seeing some friends and inducing them to make another bond for the defendant, and on this trip the defendant, Richards, escaped from the deputy sheriff, and up until the time of this trial had not been apprehended, and was not present and his whereabouts could not be ascertained at the time his case was called for trial, and the bond forfeited.

Various assignments of error are set forth, but the real question at issue here is whether or not the facts as heretofore stated constitute a substantial compliance with the law, and whether or not they are sufficient to exonerate the bondsmen. The trial court held that they were insufficient, and that before bondsmen could be exon-

erated, that there must be a strict compliance with the statutory provisions in that particular. And defendant in error cites the statutes, being section 2926, Comp. Stat. 1921, which reads as follows:

"Any party charged with a criminal offense and admitted to bail may be arrested by his bail at any time before they are finally discharged, and at any place within the state, or by written authority indorsed on a certified copy of the recognizance, bond, or undertaking, may empower any officer or person of suitable age and discretion, to do so, and he may be surrendered and delivered to the proper sheriff or other officer, before any court, judge, or magistrate having the proper jurisdiction in the case; and at the request of such bail the court, judge or magistrate shall recommit the party so arrested to the custody of the sheriff or other officer, and indorse on the recognizance, bond or undertaking, or certified copy thereof, after notice to the county attorney, and if no cause to the contrary appear, the discharge and exoneration of such bail, and the party so committed shall therefrom be held in custody until discharged by due course of law."

—and contends that the acts and conduct of the bondsmen, plaintiffs in error herein, wholly failed to comply with the provisions of the law, and further cites in support of this contention and in support of the judgment of the court, the case of State ex rel. Hankin v. Holt et al., 42 Okla. 472, 141 Pac. 969, wherein the court said:

"The essential requirements in declaring a forfeiture of a bail bond are that the court should find as a fact that the bond had been executed in a particular case, and that there had been default in some one of the conditions written in the bond."

The court further lays down, in that case, the rule that:

"The judgment or order of the trial court in declaring the forfeiture of such bond cannot be collaterally attacked in a subsequent action against the principal and sureties on the bond."

This authority, however, is not directly in point with the case at bar; it was an action brought by the county attorney against the sureties on the bond, and based on the judgment of forfeiture theretofore rendered and we have no criticism to make of the law as set forth in the case. The forfeiture is a judgment, and when not appealed from it becomes final, and except for lack of jurisdiction or fraud it cannot be attacked collaterally. In fact, the facts relied upon in that case are entirely different from the facts in the case at bar; there the sureties sought to attack the bond for irregularities in the execution

and filing of same, a defense of which they could not avail themselves after the judgment of forfeiture became final, and in which there was no real merit and could not have prevailed at any time. It seems that the clerk failed to write upon the bond his approval. And attention is called to the case of Cameron v. Burger et al. (Ore.) 120 Pac. 10. The facts in this case are that the defendant, during the trial of the case and while the jury was deliberating, asked permission of her attorney and obtained from the presiding judge permission to absent herself from the court room, and did not return, and was not thereafter apprehended. The bondsmen contended that when the defendant made her appearance at the trial they were then exonerated from further liability on the bond, but the court, we think very properly, holds otherwise and properly forfeited the bond. Another case, Edwards et al. v. State, 39 Okla. 605, 136 Pac. 577, is cited as a controlling authority in this case, wherein the court announces the rule that:

"In such an action parol evidence to prove a surrender of the principal to the sheriff is inadmissible in support of the claim of discharge by the surety."

But this case, like the others cited, was a suit of the state against the sureties on the bond based on the forfeiture, from which there was no appeal taken, and we think the rule is correct that the judgment of the forfeiture had become final and the question which was necessarily adjudicated by the court at the time forfeiture was declared could not be readjudicated in an action against the bond; the court also held in that case that a strict compliance with the statute is necessary to effectuate a release.

This was a case wherein suit was instituted against the bondsman on supersedeas bond given after the trial and conviction, and appealed to the Criminal Court of Appeals, and an order was made extending time for filing case-made and perfecting the appeal; the defendant abandoned his appeal, and did not perfect it, and absconded, whereupon, after the expiration of the time for perfecting the appeal, the county attorney asked for the forfeiture of supersedeas bond, which was granted, and the judgment of forfeiture became final, and thereafter this suit was instituted against the principal and bondsmen and many authorities are cited in support of the contention of the state in that case, and in the body of the opinion we find this, language:

"It does not appear from an examination of the record in this case that the plaintiff in error appeared in the county court when

the forfeiture of the bonds were taken or afterwards made application to that court to vacate or set aside the forfeiture or made any effort in that court to relieve himself from the consequences of the forfeiture. He seemed to have remained passive until after action was commenced in the district court, when he attempted to show as a defense, by oral testimony, a surrender of the principal. This could not avail him as a defense in such action. He might have secured his discharge by complying with the provisions and conditions of the statute above quoted, by proper steps taken in the county court. That he did not do this seems to have been his own fault, and he should not now complain of the result."

The statute referred to, being section 2927, Comp. Stat. 1921, contains the following provisions:

"But if at any time before the final adjournment of the court the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just"

—and further provides:

"After the forfeiture, the county attorney must proceed with all due diligence, by action against the bail upon the instrument so forfeited, if money be deposited in lieu of bail, the clerk of the court or other officer with whom it is deposited must immediately after the final adjournment of the court, pay over the money deposited to the county treasury."

This is conclusive that the judgment of forfeiture is a final judgment, and when not appealed from and after the adjournment of the court in which it is rendered becomes binding on all parties concerned, and cannot be collaterally attacked, except as heretofore stated, but we do not regard these authorities as necessarily controlling in this case. This is a direct attack against the judgment of forfeiture in the manner provided by law, and the question here for our determination is whether or not there was an abuse of discretion by the court in rendering the judgment of forfeiture appealed from. The courts are clothed with a rather broad discretion in dealing with matters of this character, and where timely motion is filed, and facts pleaded and proven which clearly and conclusively show an intention on the part of the sureties, which intention was made known to the constituted authorities of the state, to surrender the prisoner and be exonerated, and where a substantial compliance is had with the provisions of the law, we are inclined to the opinion that fair dealing and justice demand that the forfeiture be set aside, and that the bondsmen should be declared to be exonerated.

This involves the construction of our statutes, being section 2926, Comp. Stat. 1921, which has heretofore been cited in this opinion. The statutes first provide two different means, or ways, whereby the defendant may be apprehended and arrested:

(1) The defendant "may be arrested by his bail at any time before they are finally discharged, and at any place within the state." The mere fact that parties are surety on a criminal bond vests them with all the process necessary to justify them in making an arrest of the defendant and returning him into the custody of the proper authorities.

(2) The bondsmen may by the procurement of a certified copy of the bond empower any officer or person of suitable age and discretion to act as agent and make the arrest armed with no other authority or process than a certified copy of the bond with written authority indorsed on same.

And the statute further provides that upon arrest, the prisoner shall be surrendered and delivered to the proper sheriff or other officers before any court, judge, or magistrate having proper jurisdiction in the case; in this instance the arrest was made by a deputy sheriff and the prisoner was conveyed or taken to the office of the sheriff, and we take it from the language of the statutes that when the arrest is made by the sheriff himself or his deputies, that the duty of taking the prisoner before a proper magistrate or court devolves upon the officer in charge of the prisoner rather than the bondsman, and further, the statute provides:

"At the request of such bail the court, shall recommit the party so arrested to the custody of the sheriff or other officer and indorse on the bond or certified copy thereof, after notice to the county attorney, and if no cause to the contrary appear, the discharge and exoneration of such bail, and the party so committed shall therefrom be held in custody until discharged by due course of law."

We think this provision of the law is made as much for the prisoner, the defendant, as any other party concerned in the transaction, if for any reason a prisoner was about to be improperly committed to jail it would be very important to him that the question of his incarceration should be adjudicated by a court of competent jurisdiction, if he had formerly been discharged by the court, or acquitted of the charge, or if he is not the party named as principal in the bond for which bond had been given the bail would have no right to have him recommitted to jail, and in such event a strict compliance with the provisions of the statutes relative to commitment would become

material and vital, but where there is no question raised or controversy as to the identity of the prisoner, and the fact that the charge for which he has been granted bail is still pending, and where the prisoner makes no complaint, and waives his right to have the matter adjudicated by a court of competent jurisdiction, we can conceive of no injustice that has been done to any party in interest, or should the officer to whom the prisoner is delivered be in doubt as to the identity of the prisoner, or whether or not the charge was still pending, he could very properly invoke that provision of the statutes for his benefit in order to protect himself and his bondsmen against the charge of false imprisonment or improper conduct. The statutes further provide that notice to the county attorney shall be given, and if no cause to the contrary appears the discharge and exoneration of such bail shall be granted. The right to be exonerated from bail being a statutory right, we can conceive of no other purpose of notice being given to the county attorney than that he might advise the court or officer having the prisoner in charge as to whether or not the case is still pending in which bail has been granted, and whether or not the case will be prosecuted. If the matter had been tried, dismissed, or if the county attorney had determined not to prosecute the case for any reason which might be made to appear to the satisfaction of the court, there would be no necessity to recommit the prisoner to jail, and further deprive him of his liberty.

This section of the statutes provides the entire scheme of the law as to arrest, imprisonment of a defendant, and the discharge and exoneration of bail, and while we have no criticism to offer as to the rule heretofore announced, that the statutes should be strictly construed, we likewise believe that it should be administered at all times in a just and righteous manner, and that the state should never be in the attitude of relying on a strict construction and purely technical advantages to the disadvantage of a private citizen, who has in good faith made a substantial compliance with the requirements of the law.

In the Edwards Case, supra, the court said:

"The bail have their principal on a string, and may pull the string whenever they please and render him in their discharge; they may take him up even upon Sunday and confine him till the next day, and there render him, for the entry in this court, is traditur in ballium, etc., and the doing it on Sunday is no service of process." U. S. v. Stevens (C. C.) 16 Fed. 105.

This is an apt illustration of the power of the bondsmen, but we see no reason why the same rule should not be applicable to the officers of the law, and the constituted authorities of the county and state, and when the bondsmen deliver the prisoner back to the sheriff, the constituted authority, who is the proper custodian of all county prisoners, he then delivers the string that he has, into the hand of the state and into the hands of the properly constituted authorities, who at that time are under oath to properly enforce the law and likewise protect the interest of all, and it then becomes his duty to exercise dominion over the prisoner and pull the string at will as much as was it the duty and privilege of the bondsmen prior to the redelivery of the prisoner to the sheriff, but even the court, in this case, clearly recognizes the distinguishing marks and differentiates between the Edwards Case and cases of the character of the one with which we are now concerned, as indicated in the quotation heretofore referred to, wherein the court indicates that a different condition might have existed had the principal or his bondsmen, in due time, as did the bondsmen in this case, set up their defense and then appealed from the judgment of the court as is provided for in section 2927, Comp. Stat. 1921.

We find numerous authorities, especially from the statutes of Arkansas and Texas, which uphold the rule which we are inclined to follow here, but we do not cite them as controlling authorities in this state, for the reason that the statutes of those states are not so complicated and do not have so many provisions, and such provisions as are found in our statutes. In the case of State v. Hines et al., 37 Okla. 198, 131 Pac. 688, the court distinguishes between a direct attack as provided by the statute against the judgment of forfeiture and a suit against the bondsmen based on the forfeiture after it has become final, and in the body of the opinion we find this language:

"If by illness or accident the defendant is prevented from attending court, his recognizers should be relieved from liability on account thereof. But this contemplates that the relief sought be prosecuted at the proper time; and in the proper court; otherwise, as in all other cases the judgment would become final. In such cases the sureties must take timely notice of the fact and default of their principal.

In R. L. C., volume 3, page 43, sec. 51, we find this language:

"After the conviction of an accused, for whose enlargement bail has been given and

his passing into custody of the sheriff, the court cannot without the knowledge of the sureties upon granting him a new trial, permit him to go at large under the former bond. The placing of the prisoner in the custody of the sheriff released the sureties and in order to hold the sureties for further appearance of the defendant a new contract is required."

And in the same authority, section 59, we find this statement:

"Bail may at any time exonerate themselves by surrendering their principal to the proper authorities, or the principal may voluntarily surrender himself to the proper authorities before the day stipulated and in such event the surety is discharged. Such is the rule in both civil and criminal cases. The principal may make a voluntary surrender of himself without the agency or even the knowledge of his bail; and placing himself in the custody of an officer for the purpose of being detained is an effectual surrender by the principal to discharge the surety. If one of several sureties in a bond surrenders the principal this absolves all the sureties from liability, though the principal afterwards escapes. The surrender may also result from the act of the state, in which event it will have the same effect of discharging the sureties for any act done by the state or its officers, under lawful authority, that deprives the sureties of control over their principal, changes the relation the parties sustain to each other and their relation to the state, and thereby relieves the sureties from their obligation. Where the accused has been produced for trial and has been actually taken into custody of the law the bail are discharged. * * * "

And in section 61 of the same authority the rule is announced that:

"The arrest and surrender of the principal to the authorities of another jurisdiction, upon requisition, will discharge the bail from liability to procure his appearance in accordance with the conditions of their bond, as the inability of the surety to produce the principal is caused by the action of the state itself."

We call attention to these authorities to show the general inclination or opinion of law writers on the subject, and to call attention to the fact that the state and constituted authorities and agencies thereof are bound by the law and have duties to perform in the administration of the same as well as a private citizen. And to hold that a citizen is liable, by reason of the neglect of duty on the part of the constituted authorities of the state, is not in keeping with our views and ideas of justice. The weight of authority is inclined to such a construction as we place on our statutes, and it is by far the better rule. We think that under our statutes a certified copy of a bond constitutes due process of the court, authorizing the sheriff to arrest and take charge of the defendant and detain him, so the officer becomes responsible for his custody and care and the prisoner's bondsmen are relieved from any further liability.

In the case of Carter v. State, 43 Ark. 132, the court said, in passing upon a statute which required the surrender of a prisoner to the sheriff:

"So if the sureties surrender their principal to an officer, whom they believe to be an officer, de jure as well as de facto, they are discharged."

This was a case where the sheriff had been re-elected and since entering upon his duties after re-election had made no appointment of deputies, and the prisoner was delivered to a man who had formerly served as deputy during the former term of the sheriff, and the prisoner thereafter escaped from the custody of the deputy, and while, strictly speaking, he was not a deputy sheriff, the Arkansas court held that the delivery to him as a de jure or de facto officer was sufficient and that the bondsmen were exonerated. And in the case of Cook v. State, 91 Ala. 53, 8 South. 686, the court said, referring to the case and the authorities therein cited:

"By these authorities it seems to be established beyond cavil that when a principal is taken into custody by the proper officer he is no longer in the custody of the bail and the bail are discharged."

6 Corpus Juris, article 331, lays down the following rule:

"Surrender should generally be made to the sheriff of the county in which the indictment against the defendant is pending or to a deputy sheriff."

And in Am. Dec., volume 99, page 218 (note), we find numerous authorities which we think sustain our view. The case of Harp v. Osgood, 2 Hill, 216, holds:

"Where a principal voluntarily surrenders himself, or is surrendered by his bail to the proper authorities before the day stipulated in the bond the surety is discharged. Such is the rule in both civil and criminal cases."

Dick v. Stoker, 1 Dev. 91:

"The principal may make a voluntary surrender of himself without the agency or even the knowledge of his bail; and placing himself in the custody of an officer for the purpose of being detained is an effectual surrender by the principal to discharge the surety."

And in the case of Saunders v. Quigg, 112 Pa. St. 546:

"So where an insolvent fails to obtain his discharge as an insolvent debtor and voluntarily surrenders himself to the warden of the jail of the county: he complies with the alternative condition in the bond; 'that he shall surrender himself to the jail of the county,' and though such officer refuses to receive him, his bond is void and his sureties are discharged."

Shields v. Smith, 78 Ind. 425:

"Where the sureties agree to surrender the principal and are requested not to do so, and it is agreed to release them from a recognizant if they do not make the surrender, they are released from liability; or if they surrender the principal and he is afterwards discharged by due process of law, they are likewise released."

And in the case of State v. Doyel, 12 La. Ann. 653:

"If one of several sureties in a bond surrenders the principals, this absolves all the sureties from liability though the principal afterwards escapes."

These authorities may be more liberal than the line of authorities which has heretofore been followed, to some extent, by our court, but we feel that such a construction as we are inclined to give is more subservient to the ends of justice and fair dealing than a more strict and rigid construction of the law would be. We should look to the substance and spirit of the law and not to the form or the letter thereof. In this case the sheriff was properly armed with due process to make arrest and did make the arrest; that the bondsmen intended, and the constituted authorities of the state understood the purpose of surrendering the prisoner, was to exonerate the bondsmen is beyond doubt, and we believe the real intentions and purposes of the parties to the contract, such as a criminal bond, should be followed and should govern rather than mere technicalities, and we believe that the court's action in this case was an abuse of his judicial discretion. We believe that a substantial compliance with the law had been performed and the same results obtained, to wit, the surrender of the prisoner to the sheriff, as would have resulted had every letter of the law been carefully followed, and we therefore recommend that this case be reversed and the court directed to enter an order sustaining the motion to vacate and set aside the forfeiture.

By the Court: It is so ordered.