KINGFISHER NAT. BANK OF KINGFISHER v. JOHNSON *et al.*

No. 2079, Okla. T.    Opinion Filed September 14, 1908.

(98 Pac. 343.)

**TRIAL—Issues—Instructions.** It is error for the court to instruct the jury upon an irrelevant issue not raised by the pleadings when such instruction is strongly calculated to confuse and mislead the jury.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by the Kingfisher National Bank of Kingfisher against C. B. Johnson and George M. King. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

This is an action upon a promissory note brought by Kingfisher National Bank, who is plaintiff both in this court and the court below, against C. B. Johnson and Geo. M. King, defendants in the court below. Defendant Johnson filed no answer to plaintiff's petition and made default. Defendant King filed an answer, counterclaim and cross-petition, to which demurrer was filed by plaintiff. The court sustained the demurrer as to the counterclaim and cross-petition, but overruled the same as to defendant's answer. Plaintiff then filed a reply, and the case was tried before a jury and resulted in verdict and judgment for defendant King. From this judgment, plaintiff appealed to the Supreme Court of the territory of Oklahoma, and the case comes to this court under the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267). The assignments of error require a somewhat lengthy statement of the pleadings and the evidence which will appear in the body of the opinion.

*Noffsinger & Hinch,* for plaintiff in error.

*D. K. Cunningham,* for defendant in error Geo. M. King.

HAYES, J. (after stating the facts as above.   The court instructed the jury upon two theories of defense, to-wit:  First, that the defendant King was an accommodation maker of the note sued upon; and, secondly, that he was a surety on the note for the defendant Johnson who was the principal maker.   To all of the instructions of the court given upon the theory that King was a surety on the note plaintiff excepted, and such instructions have been assigned in its petition as error, and it is insisted in this court by plaintiff that such instructions were error, that they presented two inconsistent theories of defense to the jury, and for the further reason that the instructions given upon the theory that King was a surety on the note were upon an issue not presented by the pleadings or the evidence.

We shall first discuss the contention that such instructions were not founded upon the pleadings or the evidence in the case. Plaintiff's petition contained the usual necessary averments in an action upon a promissory note against the makers, and alleges that the defendants executed the note in controversy, which is a joint note.   There is nothing in the allegations of plaintiff's petition to indicate that King signed the note in question as surety for Johnson.   King in his separate answer to plaintiff's petition attempts to set up two defenses in ten paragraphs.

In the first paragraph of his answer he denies each and every allegation of plaintiff's petition except as thereinafter admitted, which constituted his first defense.   The second paragraph of his answer sets forth the facts and circumstances leading up to and under which King signed the note sued on herein, and alleges that the note sued on represents the balance due on a $1,700 note made payable to the order of plaintiff dated June 17, 1903, signed by C. B. Johnson & Co., C. B. Johnson, and Geo. M. King, and that said $1,700 note was secured by chattel mortgage on said date given by C. B. Johnson & Co. on certain coal and other property of C. B. Johnson & Co., which mortgage was signed by C. B. Johnson & Co., C. B. Johnson, and Geo. M. King, and he alleges that his signature was obtained to said note for $1,700 by plain-

tiff and to the mortgage securing the same for the accommodation of plaintiff and the defendant C. B. Johnson, and that plaintiff and the defendant Johnson represented to him that, if he would sign the same, plaintiff would take the mortgage from Johnson on certain coal and other property, and that, if Johnson sold any of the property mortgaged, the bank would look after the proceeds of the same. and see that the proceeds were applied to the payment of this $1,700 note; and that both note and mortgage were signed by him for the accommodation of plaintiff and said Johnson as aforesaid, and that otherwise he would not have signed the same, and that he had no interest in the property mortgaged.

The third paragraph of the defendant's answer alleges, somewhat in repetition, that King was not a partner of the firm of C. B. Johnson & Co., and had no interest in the firm, and again alleges that he had no interest in the property covered by the mortgage securing the said $1,700 note, and that the bank knew it, and again alleges that he signed said note and mortgage for the accommodation of plaintiff without any other consideration whatever, and that plaintiff represented that it would see that all of the proceeds derived from the mortgaged property would be applied to the indebtedness evidenced by the note signed by this defendant as aforesaid, and that plaintiff well knew at the time he signed said note and mortgage that he would not have signed same or or either of them were it not for the said promise of the plaintiff.

By the fourth paragraph of the answer he alleges that at the time he executed said note and mortgage plaintiff represented that the defendant. Johnson was in good financial condition, and that otherwise he would not have signed said note or chattel mortgage.

By the fifth paragraph of his answer he alleges that said $1,700 note was from time to time extended by plaintiff at the request of said Johnson without the knowledge or consent of the defendant.

By the sixth paragraph he alleges that the defendant C. B. Johnson made, executed, and delivered to plaintiff on or about

June 4, 1904, the note sued upon in this action which is for the sum of $700, and that plaintiff accepted said note without the signature of this defendant, and without the knowledge or consent of this defendant at the time of making and delivering the same, and that, therefore, the balance due on the $1,700 note was paid.

By the seventh paragraph of his answer, defendant proceeds to explain how he happened to sign the note sued upon in this action. He alleges, in substance, that, after plaintiff had accepted the note from Johnson in payment of the balance due on the $1,700 note, plaintiff requested defendant to sign said note for the accommodation of plaintiff; that in making its report to the bank examiner plaintiff desired the signature of this defendant on said note; that defendant, trusting and relying on and believing said representations to be true, and that plaintiff was acting in good faith, signed the note sued upon in this action for the reason that he believed that his signature was desired by plaintiff only for such purpose, and that the only purpose for which and the only agreement on which he signed the note sued upon was that it was for the accommodation of the plaintiff. He further alleges that at the time he signed the note as aforesaid plaintiff represented that the same was in payment of the balance due on the $1,700 note, and that the chattel mortgage given to secure the said $1,700 note was still in force, and had been properly preserved, and that the property in the mortgage which was sold had been properly accounted for and applied on the $1,700 note, and that plaintiff would see that the balance would be properly applied on said note, and that there was a sufficient balance to pay said note in full.

It is alleged in the eighth paragraph of the answer, in substance, that at the time said $1,700 note was executed Johnson was insolvent, of which fact plaintiff was aware, but that it failed to notify defendant of such fact, and that it failed to protect defendant by preserving said mortgaged security, that plaintiff never filed said chattel mortgage for record with the register of deeds of Kingfisher county, and that it allowed Johnson to sell and dispose of the property included in the mortgage and deposit the

proceeds thereof with the plaintiff and that plaintiff and defendant Johnson applied the same to the payment of other obligations of Johnson, all of which had been done for the purpose of cheating and defrauding defendant, and for the purpose of making this defendant pay the   obligations of Johnson.

In the ninth paragraph he alleges that, if the proceeds of the mortgaged property had been applied in the payment of said note, the same would have been sufficient to have paid the note in full, and by the tenth paragraph he alleges that plaintiff had afterwards permitted the mortgaged security to be altered, disposed of, and destroyed for the express purpose of defrauding this defendant.

Plaintiff's reply denies each and every material allegation of the answer.   Defendant's answer was not sworn to, and therefore the execution of the note sued upon was admitted.   Section 4312, Wilson's Rev. & Ann. St. Okla. 1903.

Under his second defense, defendant alleges that the original note of $1,700 executed by him and defendant Johnson was executed by him for the accommodation of plaintiff and Johnson. This allegation he makes twice, but under our view of this case all the allegations of defendant's answer relative to the execution of the $1,700 note were immaterial and surplusage and plead the evidence relative to the circumstances under which the $700 note was signed.   The $1,700 note is not sued upon in this action.   It constitutes no part of plaintiff's cause of action.   Plaintiff's suit is based upon and is for the recovery upon the $700 note which defendant alleges in the sixth paragraph of his answer was executed by defendant Johnson and accepted by plaintiff without the knowledge of defendant at the time of the making and delivery thereof to plaintiff as payment of the balance due on the $1,700 note, and in the following paragraphs of his answer defendant explains the circumstances under which he signed the $700 note after it had been executed by Johnson alone and accepted by the plaintiff in payment of the balance due on  the $1,700 note.   He states that it was signed by him at the instance and request of the plaintiff for its accommodation, to assist plaintiff

in making its report to the bank examiner, and, believing that this representation of plaintiff as to the reason that it desired defendant to sign said second note to be the only purpose for which his signature was desired, defendant signed same. Nowhere in the answer is it alleged that defendant signed the note sued upon as surety for Johnson. It is true that in several paragraphs it is alleged that defendant would not have signed the note but for the representations of the plaintiff bank that it continued to hold the $1,700 note and the mortgage securing the same, and that it would see that the remainder of the proceeds from the property covered by said mortgage would be applied upon the note herein. and that defendant would be protected. We can readily see how all of these facts might be very material and valuable in an answer the defense of which was based upon the rights of a surety, but, taken in connection with the allegations of defendant in his answer that the note in controversy had been accepted by the bank in payment of the balance on the $1,700 note when signed alone by Johnson and that he signed same solely for the accommodation of plaintiff, such allegations relative to the old note and the mortgaged property are surplusage, and tend to do nothing further than to explain the circumstances under which he signed the note as accommodation maker with reluctance. And we can readily understand how such caution on his part could, and would, have likely been taken by him, although signing the note only as accommodation maker, for the reason that, if the note should be negotiated by the payee and defendant thereby made liable on the same, it would then become very important to see that the collateral security should be protected and preserved in order to protect him against such liability to an indorsee. As before stated, there is nothing in plaintiff's pleading that raises the issue that the note was executed by defendant as surety, nor does the evidence of plaintiff present such issue. All the evidence introduced by plaintiff is in an effort to prove and tends to prove that the $1,700 note was executed by Johnson & Co., a then partnership composed of Johnson and defendant King, and by King and Johnson individ-

ually; that the same was executed by them as joint makers, and by neither as surety for the other. The testimony of the cashier of the bank, who testified for plaintiff, is that the note in controversy was executed by Johnson and King in payment of the balance on the $1,700 note, and that it was signed by defendant King without any request from the bank, but voluntarily as a settlement of his former obligation. On the other hand, King testified as to how he signed the note sued upon in the following language:

"Along about the middle of July, 1904, Mr. Wence (who was cashier of plaintiff bank) spoke to me one day, and said he would like to see me at the bank about some matter in the bank, and I stepped in the bank in the afternoon, and, when I stepped in, he told me he had a note he would like for me to sign, and I asked him what one it was, and he said Charley Johnson's and I said I did not want to sign a note with Charley Johnson, and he said: 'This is the balance due on that $1,700 note you signed with him about a year ago.' I said: 'I supposed that note was paid off long before that.' He said: 'No; Charley has been making payments, and there is plenty of security to pay off this note, but, in order to make a good showing before the bank examiner, we would like to have you sign this note for our accommodation.' I said: 'If there is plenty of security on it, I don't see what you need my name on it for'—and he said there was plenty of security to pay two such notes and that they would not call on me to pay it, but simply wanted me to sign it for their accommodation, so they could make a good showing before, the bank examiner. I said I had all confidence in him and their bank, and that I would sign it with that understanding."

A witness for the defendant by the name of Poole testified that he was in plaintiff's bank in June or July, 1904, at which time he heard a conversation with the cashier of the bank and defendant King relative to a $700 note, and he states the conversation had in the following language:

"Q. State all the conversation you heard? A. I heard the man behind the counter say there is plenty of security to pay off two such notes, and, if George would sign it, they would agree not to call on him to pay it. Q. Was it Mr. Wence said that? A. Yes, sir. Q. After that was said, what did King say? A. He

said: 'I have all confidence in this bank, and I will sign it for your accommodation, but I don't like to.'"

There is evidence in the record, introduced without objection, tending to show that at the time defendant executed the note sued upon the cashier of the plaintiff bank represented to him that the bank still held the $1,700 note and the mortgage given to secure the same, and that the bank would continue to hold it as collateral to the new note, and that there was sufficient property to pay the amount of the new note, and there is also some evidence that tends to establish that the property covered by the mortgage was disposed of by Johnson and the proceeds thereof deposited in the bank, and that a portion of same was used in paying other debts than the note to the bank which the mortgage secured, but this evidence does not prove that King signed the note sued upon as surety, for he alleges that he signed it as accommodation maker and so testified, and his testimony is all to the effect that he signed it as accommodation maker with great reluctance, and only after such representations had been made to him.

The court instructed the jury by the first, second, and third instructions, none of which were objected to, to the effect that, if they found that the note sued upon had been executed by defendant King as an accommodation to the plaintiff bank, no recovery could be had. If, on the other hand they found that he executed the original $1,700 note and the $700 note sued upon as a joint maker with Johnson, or if at the time the $1,700 note was executed by them Johnson & Co. was a partnership composed of Johnson and King, or if it was not a partnership composed of said persons, but by their acts plaintiff bank was led to believe they had entered into a partnership, and that said note was being executed by them as partners, then they were joint makers of said note, and were liable thereon. The court then, as a fourth instruction, instructed the jury as follows:

"You are instructed that if you find from the evidence in this case that the plaintiff, the Kingfisher National Bank, took a chattel mortgage as security upon the contracts or promissory notes

introduced in evidence in this case, and also took the individual name of defendant George M. King as surety on said promissory notes and other contracts, the chattel mortgage so taken as collateral security is held in law to be for the benefit of the defendant King as surety as well as for the benefit of the plaintiff, and in that case the plaintiff would be bound to exercise reasonable care and diligence in preserving and keeping intact the validity and security of said mortgage, and, if you further find that the plaintiff did any act of commission or omission without the knowledge or consent of King, which lessened the value of such chattel mortgage as security, the defendant King would be released to the extent to which he is prejudiced by the act of the plaintiff."

This instruction was excepted to by plaintiff, and is assigned as one of the errors for which it asks a reversal of this case. By this instruction the court undertook to instruct the jury upon the laws governing the rights of a surety, but the issue of the rights of a surety was not presented by the pleadings nor the evidence in this case. The failure of the court to instruct the jury as to what facts in law constitute one an accommodation maker of a note and what constitutes one a surety on a note, was not in itself error, for the reason that no request was made for such instruction; but the failure of the court to instruct the jury upon these questions added to the vice of the instructions given by the court on the rights of King as a surety, for the reason it left the jury to assume that his rights as surety was an issue in the case. The great mass of testimony before the jury introduced by defendant to the effect that the bank had permitted Johnson to waste and dispose of the property on which the bank held a mortgage to secure the payment of the $1,700 note, added to the instructions of the court on defendant's rights as a surety, brought prominently before the jury this issue, which, in fact, was not an issue under the pleadings in the case, nor was it made so by the evidence in the case, and the same was inapplicable and misleading, and the verdict of the jury should not have been permitted to stand. *Missouri Pacific Ry. Co. v. W. J. Pierce,* 33 Kan. 61, 5 Pac. 378; *Emma Meyer v. William Reimer et al.,* 65 Kan. 823, 70 Pac. 869.

The judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.