FISH v. BLOODWORTH.

No. 2212.    Opinion Filed November 19, 1912.

Rehearing Denied January 7, 1913.

(129 Pac. 32.)

1.    PRINCIPAL AND AGENT—Authority of Agent—Instructions. F., as B.'s agent, procured a loan for her. He sent a check for the proceeds to G., making it payable to the order of G. and B. The testimony was in conflict as to whether or not G. forged B.'s name to the check. The check was paid by the drawee bank and G. absconded with the money. There was also conflict in the testimony as to whether G. was the agent of B. or F. The court

so instructed the jury as to make the case turn upon the question of forgery, and not agency. **Held**, that this was error, as the question of agency was the controlling question in the case.

2. **SAME.** Where loss is inflicted upon one of two innocent parties by the fraud and forgery of a third party, who is alleged by each party to be the agent of the other, the material question in the case is which one of the parties was he agent for, as his principal must bear the loss.

3. **WITNESSES—Competency—Husband and Wife.** Where a husband accompanies his wife to hear a conversation between her and a third person, particularly when this conversation is not with the adverse party and does not concern the vital issue in the case, the husband is not acting as the agent of his wife concerning the transaction in such a sense as to make him competent as a witness in a case to which she is a party, within the meaning of section 5842, Comp. Laws 1909, making the husband and wife incompetent as witnesses for or against each other, "except concerning transactions in which one acted as agent for the other."

(Syllabus by Ames, C.)

*Error from District Court; Garvin County;*
*R. McMillan, Judge.*

Action by Eliza Bloodworth against C. O. Fish. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Carr & Field* and *Tibbetts & Green,* for plaintiff in error.

*O. W. Patchell, Marion Henderson,* and *J. T. Blanton,* for defendant in error.

Opinion by AMES, C. The plaintiff sued the defendant for the proceeds of a loan which she alleged that he had procured for her as her agent. She alleged that she had delivered to him a note and mortgage, and that he had procured the money from the lender and had failed to deliver it to her. The defendant admitted having procured the money for her, but alleged that he had sent a check for the money to one Graham, the plaintiff's agent; that the check was payable to the joint order of Graham and the plaintiff; that it had been indorsed by them both and returned to him; and that in that manner he had remitted to her the money which she claimed. The defendant lived at Guthrie, while Graham lived at Pauls Valley. The plaintiff claims that

Graham was the defendant's agent, while the defendant claims that Graham was the plaintiff's agent. It is clear that, when the defendant procured the loan, after deducting his commission he sent the check to Graham, payable to the order of Graham and the plaintiff. The check was drawn upon a bank at Pauls Valley. Graham presented to this bank what purported to be an authority from the plaintiff permitting him to indorse the check. He thereupon indorsed the check with his own name and with hers and procured the money. There was evidence tending to show that this written authority was a forgery, and there was evidence tending to show that the plaintiff had admitted executing it. . There was evidence tending to show that Graham was the plaintiff's agent, and there was evidence tending to show that Graham was the defendant's agent. The allegations of authority were not denied under oath, nor was any reply to the answer filed; but the case was treated in the trial court as though the issues were completed, and will be so treated here. Under the instructions of the trial court, the case was made to turn upon the issue as to whether the written authority purporting to have been executed by the plaintiff, authorizing Graham to cash the check, was a forgery, and upon this issue the jury returned a verdict for the plaintiff.

We do not think this was the controlling issue in the case, as the means which Graham pursued in securing possession of the money was a mere incident to the fact that he did secure the money and did not account for it. If Graham were being prosecuted for forgery, then, of course, whether or not he had this authority would be the material issue; but here the question is: Shall the plaintiff or the defendant suffer by the wrongdoing of Graham? The plaintiff is innocent in the matter; the defendant is innocent in the matter. There must be a complete loss of the proceeds of this loan to one of two innocent parties. Which one shall suffer the loss  Graham has the money. He has absconded. The money therefore cannot be procured from him. Shall the loss be borne by the plaintiff or the defendant? Manifestly, it must be borne by the one for whom Graham was acting. If Graham was acting as agent for the defendant, then his em-

bezzlement must be charged to the account of the defendant. If Graham was acting as agent for the plaintiff, then manifestly the payment of the money to him was payment to the plaintiff, and she must stand the loss. If the defendant, instead of sending the check to Graham, had sent currency, the situation would have been the same. The fact that Graham may or may not have been guilty of forgery is purely incidental, because the ultimate question is who is responsible for his conduct, and whether he forged the authority does not determine whether he was agent for the plaintiff or defendant, because he might forge this authority had he been agent for either. Manifestly it was the duty of the defendant to pay the money over to the plaintiff, or her authorized agent. If, therefore, Graham was her authorized agent, he got the money, and when he got the money it was equivalent in law to the plaintiff herself having received it, and if he forged the authority it would not alter the fact that he had the money. On the other hand, if Graham was the defendant's agent, then it is equally clear that the defendant had not discharged his duty by paying the money over to the plaintiff, because remitting the money to his own agent would not be a remittance to the plaintiff. The case must, therefore, turn upon the question whether Graham was the agent for the plaintiff or defendant, and as this issue was not properly submitted to the jury, and as the instructions made the case turn upon the question of forgery, there was error which requires a reversal.

One other question requires consideration. The plaintiff's husband was permitted to testify as to a conversation taking place some time after the check had been cashed, between the cashier of the bank, the plaintiff, and himself, over the objection of the defendant that he was an incompetent witness, on account of the relation between him and the plaintiff. He testified that he was acting as agent for his wife in going with her to the bank to talk about the matter with the cashier. This is an adroit and ingenious position, but in its final analysis it seems no more than a claim that he was the agent of his wife to hear a conversation. The statute provides (Comp. Laws 1909, sec. 5842):

"The following persons shall be incompetent to testify: * * * (3) Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards. * * * "

The existence of the agency may be shown by the wife or husband. *Smith v. Travel,* 20 Okla. 512, 94 Pac. 529. And when the agency is established then the husband or wife may testify. *Armstrong, Byrd & Co. v. Crump,* 25 Okla. 452, 106 Pac. 855; *Wade v. Sumner,* 30 Okla. 784, 120 Pac. 1011. But what was the "transaction'" concerning which the husband proposed to testify in this case? It was not the transaction between the plaintiff and the defendant. He did not claim to have acted as her agent in that respect. It was not any aspect of the business which he transacted for her, but it was merely a conversation with the cashier of the bank. The cashier testified that the plaintiff admitted to him that she signed the written authority, while the plaintiff denied the admission, and the transaction in which her husband acted as her agent was to hear this denial and corroborate her testimony at the trial.

Some of the cases hold that the husband or wife cannot testify for the other as the agent, when the matter about which the testimony is offered occurs in the immediate presence of the other, who can testify as fully as the one claiming to be the agent. *Miller v. Stebbins,* 77 Vt. 183, 59 Atl. 844; *Pingree v. Johnson,* 69 Vt. 225, 39 Atl. 202; *Eastabrooks v. Prentiss,* 34 Vt. 457; *Leigh v. Citizens' Savings Bank* (Ky.) 102 S. W. 233. On the other hand, in *Menk v. Steinfort,* 39 Wis. 370, it is held that, where the agency exists, the husband may testify as to acts done by him as the wife's agent, whether done in her presence or absence. It is not necessary, however, in this case, to lay down any general rule as to whether one may testify for or against the other as to matters happening in the presence of both, because here the subject-matter of the husband's testimony does not seem to us to be such a transaction as brings the matter within

the rule of agency. The husband was not the plaintiff's agent to transact any part of the business, but merely accompanied her and participated in a conversation. In *Hale v. Danforth*, 40 Wis. 382, the court, in holding that a wife, who had been requested by her husband to ask the indorser of a note whether he was going to pay it, was not the husband's agent in such a sense as to be a competent witness for him to show admissions made to her by the indorser, said:

"Mrs. Hale was clothed by her husband with no authority to act for and bind him in any matter whatever. She was merely constituted the bearer of an interrogatory, a service which includes none of the essential elements, but only the mere shadow of an agency. To hold that she was the agent of her husband, and therefore a competent witness for him, would open the door to gross abuse. If anything is well settled in the law, it is settled to be against a sound public policy to permit husband and wife to testify against each other."

In *Donk Bros. Coal & Coke Co. v. Stroetter*, 229 Ill. 134, 82 N. E. 250, it is said:

"The court permitted appellee's wife to testify, over appellant's objection, to a conversation with Mr. Donk tending to show a promise to pay the appellee $5 per acre for securing these options. The statute makes the wife competent to testify for or against her husband 'in all matters of business transactions where the transaction was had and conducted by such married woman as the agent of her husband.' But in this case no transaction was had and conducted by Mrs. Stroetter. She testified that her husband sent her to Mr. Donk's office, and she had this conversation with Mr. Donk as the agent of her husband. But she conducted no business. To make a wife a competent witness under this clause it should appear that she was authorized by her husband to conduct some business transaction for him which she did conduct, and then she may testify. It was error to overrule the defendant's objection to her testimony. It is true the jury did not find in favor of the plaintiff for the $5 per acre he claimed, but neither did they find in favor of the 50 cents per acre which the defendant claimed. Their finding was necessarily dependent largely on the credit of these two witnesses. If Mr. Donk's credit had not been attacked by Mrs. Stroetter's testimony to an inconsistent statement out of court, we cannot know that the jury would not have accepted his version of the conversations with Mr. Stroetter and found the com-

mission was to be only 50 cents instead of fixing it at $1.50 per acre. Where a clear error appears which may have influenced the verdict, an appellate court must reverse the judgment."

In *Waggonseller v. Nancy Rexford,* 2 Ill. App. 455, it is said in the syllabus:

"The only evidence of the agency was that of the husband who testified: 'I am her agent in the transaction of her business.' He further stated that he went with his wife when she made the bargain in question, and afterwards went to see about the matter of pay. This evidence comes far short of proving an agency on the part of the husband 'in matters of business transactions,' where the transaction was conducted by the husband as agent for the wife, and is not proof of agency sufficient to let in his testimony in regard to admissions of the deceased."

We think the case comes within the reasoning of the last cases cited, and that the husband was not the plaintiff's agent concerning any transaction, and that therefore his testimony should not have been admitted.

The case should be reversed and remanded.

SHARP, C., did not participate in this case.

By the Court: It is so ordered.