## BROWNELL v. MOOREHEAD.

No. 6369—Opinion Filed Jan. 2, 1917.

Rehearing Denied May 29, 1917.

(165 Pac. 408.)

1. **Witnesses — Objection to Testimony — Competency ·of Witness.**

An objection to the competency of testimony does not raise the question of the competency of a plaintiff's wife to testify at all concerning the matter as to which inquiry is made.

2. **Principal and Agent—Powers of Agent—Emergency.**

A servant, acting in an emergency in the absence of his principal, and apparently for the protection of the interests of the principal, may frequently do things which transcend his usual authority, and they will be deemed to be authorized.

3. **Principal. and Agent—Witnesses—Wife's Agency for Husband—Wife.**

A wife was directed by her husband to answer the telephone. Held, that she was thereby constituted his agent for the purpose of hearing any message intended for him, and conveyed on such telephone call, and to repeat such message to him. Held, further. that the wife was a competent witness in a suit brought by her husband to testify concerning the fact of such conversation. and to detail the message received. Whether she was a competent witness, under the last clause of subdivision 3, sec. 5050, Rev Laws 1910, to testify concerning any communication of such message by her to her husband, not being raised, is not decided.

4. **Trial—Admission of Evidence—Responsiveness—Motion to Strike.**

It is not permissible for counsel to be quiet and allow evidence to come out and take advantage of it, if favorable. and, if not, to ask that it be stricken out. Still less can a party complain of the court's refusal to sustain such a motion to strike when the testimony given is in direct response to one of his own questions.

5. **Appeal and Error—Harmless Error—Admission of Impeaching Evidence.**

The admission of evidence. which is competent· to impeach a witness. prior to any proper foundation therefor being laid, will not be held to constitute prejudicial error,

where afterward, during the course of the trial, a proper foundation therefor is laid.

**6. Trial—Admission of Evidence—Limitation of Purpose—Request.**

The general admission of evidence competent for purposes of impeachment, but otherwise incompetent, will not be held to be prejudicial error, where no request was made to limit the effect of the testimony to purposes of impeachment.

**7. Appeal and Error—Harmless Error—Remarks of Trial Court.**

Remarks of the trial court examined, and held not prejudicial.

**8. Appeal and Error — Courts — Harmless Error—Instruction—Precedent.**

Whether or not an instruction, correct as an abstract statement of the law, but inapplicable to the facts of the case, was prejudicial to the right of plaintiff in error must be determined by this court upon the whole facts in each particular case, and the determination will ordinarily not serve as a precedent for any other case, since the same instruction may be prejudicial in one case and not in another, depending upon the facts of each case and the circumstances under which it is given. A cause ought not to be reversed for misdirection of the jury in this regard, unless this court can say that such misdirection constituted a substantial violation of a statutory or constitutional right or probably resulted in a miscarriage of justice.

**9. Principal and Agent—Continuing Agency —Proof—Circumstantial Evidence.**

A continuing agency may be proven by facts and circumstances tending to show the existence of such agency both prior and subsequent to the date of the transaction. Such facts and circumstances may properly include specific instances of conduct when such instances are sufficiently numerous to base thereon an inference of systematic conduct under substantially similar circumstances so as to be naturally accountable for by a system only and not a casual recurrence. The range of time preceding and subsequent to the event in question, within which such instances should have occurred in order to be admissible in evidence, is generally a matter in the judicial discretion of the trial court. Such circumstantial evidence is admissible even though there be direct testimony denying the existence of the agency.

**10. Same—Agency—Question for Jury—Evidence.**

Proper circumstantial facts tending to prove the existence of an agency being in evidence, and the agency being denied, the trial court was not in error in submitting the question of the existence of the agency to the jury, and in instructing them that they might take such facts and circumstances, as well as those surrounding the particular transaction, into account in determining whether or not an agency existed.

(Syllabus by Burford. C.)

Error from District Court, Cleveland County; Robert McMillan, Judge.

Action by L. M. Moorehead against J. A. Brownell, for damages for personal injuries. Judgment for plaintiff, and defendant appeals. Affirmed.

J. B. Dudley, Hutchin & Burke, and Gray & McVay, for plaintiff in error.

Williams & Luttrell, T. W. Mayfield, and McAdams & Haskell, for defendant in error.

Opinion by BURFORD, C. This action arose out of an accident occurring upon the Purcell-Lexington bridge, caused by the breaking of a buggy in which one Albert Brownell was transporting the plaintiff, Moorehead, from Lexington in an endeavor to board an outgoing train at Purcell. Plaintiff alleged and introduced evidence tending to prove that Albert Brownell was the agent of his father, J. A. Brownell, who conducted a bus or hack line running from Lexington to Purcell, and who was a common carrier of passengers for hire; that plaintiff, being desirous of going to Purcell, called by telephone the Brownell establishment and ordered a conveyance; that when the conveyance did not come, he again called; later the telephone rang, and he requested his wife to answer it; that she did so, and was advised by Mrs. Brownell, acting as agent for her husband, to have plaintiff walk down the street, and that she would send a buggy to meet him and carry him to Purcell; that plaintiff did so, and met Albert Brownell, who took him in. and in the course of the trip, in an endeavor to meet the approaching train, drove so recklessly that the buggy broke, throwing plaintiff against the bridge and breaking his hip. It was alleged as negligence that the buggy was old, worn, and unsafe; that the horse was wild and unsafe. that Albert Brownell was "an unsuitable and improper person to. have charge of said conveyance," and was a "willful and reckless driver," and that the horse was driven at a "high and reckless" speed. Defendant denied, and introduced evidence to support his denial, that Albert Brownell was his agent for any purpose; that Mrs. Brownell had authority to furnish a buggy for use in the transfer business; that she, in fact, did furnish or direct the furnishing of such buggy; that she had the telephone conversation above referred to with Mrs. Moorehead, and that there was negligence on the part of the defendant or his agents. Defendant also pleaded contributory negligence on the part of the plaintiff. The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $1,800. The resulting judgment is now before us for review upon numerous assignments of error.

So far as the testimony is concerned, it cannot be reviewed without coming to the unfortunate conclusion that it cannot, in any way, be reconciled, and that not only one, but several witnesses upon this trial committed willful and corrupt perjury. Upon which side this occurred was for the jury to determine. We are satisfied that the testimony would have reasonably supported a verdict for either party, and therefore does support the verdict rendered. Other assignments are considered seriatim.

Error is alleged in that Mrs. Moorehead, wife of the plaintiff, was allowed to testify concerning certain statements made by Albert Brownell on the evening after the accident occurred. The objection made was "incompetent, irrelevant, and immaterial, no proper foundation having been laid." The objection to the competency of the testimony does not, under our practice, raise the question of the competency of the wife of plaintiff under section 5050, Rev. Laws 1910, to testify at all concerning the matter as to which inquiry is made. Muskogee Electric Traction Co. v. McIntire, 37 Okla. 684, 133 Pac. 213, L. R. A. 1916C, 351; Hartzell v. Hartzell, 42 Okla. 390, 141 Pac. 772, Ann. Cas. 1916D, 1191; Bell v. Territory, 8 Okla. 80, 56 Pac. 853; Williams v. Joines, 34 Okla. 733, 126 Pac. 1013; Butler v. Wilson, 54 Okla. 229, 153 Pac. 823. As to the competency of the testimony itself, we think it clearly admissible, not as a statement of the agent to bind the principal (Chickasha Cotton Oil Co. v. Lamb, 28 Okla. 275, 114 Pac. 333), but as impeachment of the witness, Albert Brownell. He had previously been asked upon cross-examination, without objection, concerning certain alleged statements made at the home of plaintiff, and had denied making such statements. Thereafter on rebuttal Mrs. Moorehead was asked concerning the same statements, and allowed to testify that such statements, in substance, were made by Albert Brownell, at the plaintiff's home on the evening of the accident. There was no request to the court to limit the effect of the testimony to purposes of impeachment (A., T. & S. F. R. Co. v. Baker, 37 Okla. 48, 130 Pac. 577), and, as tending to impeach, the testimony itself was competent.

The next error alleged is as to the admission of the testimony of Mrs. Moorehead concerning a telephone conversation with Mrs. Brownell shortly prior to the accident. It appears that plaintiff, after telephoning for a conveyance, was awaiting its arrival, when the telephone rang. He directed his wife to answer it, which she did. Mrs. Brownell was on the wire and, according to Mrs. Moorehead, told Mrs. Moorehead that she had turned in the call to two of the drivers and did not understand why they did not respond, but to tell Mrs. Moorehead "to start this way, and I will send a single rig after him, and maybe—I think we can make the train all right." Objection was made to the competency of the testimony, and to that of the witness to relate it. As to Mrs. Brownell it suffices to say that we hold that there was sufficient testimony to establish that she was the agent of her husband for the purpose of receiving orders for conveyances and in directing his employes to execute such orders, and that at least the apparent authority was broad enough to cover the sending of the single rig in the emergency which is shown to have arisen, even though single rigs were not used in the defendant's general transfer business. St. L. & S. F. R. Co. v. Bagwell, 33 Okla. 189, 124 Pac. 320, 40 L. R. A. (N. S.) 1180; St. L. & S. F. R. Co. v. Nichols, 39 Okla. 522, 136 Pac. 159; Kali Inla Coal Co. v. Ghinelli, 55 Okla. 289, 155 Pac. 606.

"In every business and employment there are exigencies which are not anticipated and which require a servant to act, in the absence of the principal, for the immediate protection of his interests, and he may do things in his interest when the emergency arises which transcend his usual authority, and they will be deemed to have been authorized." Marks v. Rochester Railway Co., 146 N. Y. 181, 40 N. E. 782.

This much being determined it seems that it must be held that Mrs. Moorehead was competent to relate the conversation. We can draw no other conclusion than that when her husband directed her to answer the telephone she was constituted his agent, at least for the purpose of hearing any conversation intended for him, and of relating to him such conversation. Defendant says she was but the "ear" of plaintiff. But what is the purpose of an ear but to hear and convey what is heard, to the understanding? Surely it cannot be said that when I send one to the telephone for me to hear a message intended for me, my purpose is that my messenger shall receive the message then not repeat it to me, but shall retain it only in his own consciousness. Such is not the ordinary course of human affairs. The conclusions reached in Fish v. Bloodworth, 36 Okla. 586, 129 Pac. 32, are not in conflict with the decision here. In that case a husband was held incompetent to testify concerning a conversation where he "accompanies his wife to hear a conservation between her and a third party, particularly when this conversation is not with the adverse party, and does not concern the vital issue in the case." Here the wife did not relate a conversation which her husband also heard. The conversation was with the agent

of the adverse party, and concededly concerned the most vital issues in the case, to wit, the agency of Albert Brownell. The question raised in the brief is as to the competency of Mrs. Moorehead to testify concerning the conversation which she heard. No question is made as to her competency to testify that she related such conversation to her husband, and, not being raised, is waived. We are not therefore to be taken as passing upon the competency of the witness in that regard under the final clause of subdivision 3 of section 5050, Rev. Laws 1910.

The next error assigned is that Mrs. Moorehead was allowed to testify concerning a conversation had with Mrs. Brownell after the accident, and in relation to her having sent Albert Brownell with the single rig to get the plaintiff. Here again the objection was to the competency of the testimony, and not to the competency of the witness. The trial court was not in error in admitting this testimony, for two reasons: First, the testimony was elicited upon cross-examination by defendant's counsel and the objection made was by motion to strike. In Ardmore Milling Co. v. Robinson, 29 Okla. 79, 116 Pac. 191, this court said:

"It is not admissible for counsel to be quiet and allow the evidence to come out and take advantage of it, if favorable, and, if not, to ask that it be stricken out and not considered"

—and quoted the expression used in State v. Efler, 85 N. C. 585:

"Still less can he complain when it comes out in response to his own inquiries."

Counsel for defendant urges that the answer of the witness was not responsive to the question asked, and that therefore a motion to strike was his only remedy. After a review of the whole course of the examination, immediately preceding the question which brought out the answer complained of, we are convinced that such answer was directly responsive to the question asked, taken in the meaning which any ordinary person would draw from its language.

Second. The testimony was admissible as an impeachment of Mrs. Brownell. Although admitted in advance of any proper foundation having been laid therefor, and though improper as an impeachment at the time admitted, still when the proper foundation was afterward laid by cross-examination of Mrs. Brownell, the error in admitting the testimony was cured, there being no request to limit the effect of the testimony to purposes of impeachment. A., T. & S. F. R. Co. v. Baker, 37 Okla. 48, 130 Pac. 577; Rounsavell v. Pease, 45 Wis. 506; Roux v. Blodgett & Davis Lbr. Co., 94 Mich. 607, 54 N. W. 492.

The next error alleged relates to certain remarks made by the trial court. Mrs. Moorehead, being recalled to the witness stand, was being questioned in relation to whether it was in the morning conversation or later that Mrs. Brownell had told her that Albert was directed to go after plaintiff. The following colloquy then took place:

"Defendant objects as incompetent, irrelevant, and immaterial, and for the reason that this witness is the wife of the plaintiff For the further reason that it is a form of question which is leading and suggestive and attempting to correct the witness' former testimony by suggesting to her what he wants her to testify at this time, which is directly opposite to what she testified before.

"The Court: I heard her say when she answered that question that afterwards she said that; I remember noticing it at the time, and I don't think there is any opposition in her testimony, the way the court remembers, but I presume that the stenographer has got a record of it.

"Counsel: I desire to except to the remark as to the court's recollection."

This court has said that the trial court ought not to express opinions upon the weight of the evidence or credibility of witnesses. Newkirk v. Dimmers, 17 Okla. 525, 87 Pac. 603; Wilson v. Territory, 9 Okla. 331, 60 Pac. 112; Kirk v. Territory, 10 Okla. 46, 60 Pac. 797; Hicks v. U. S., 2 Okla. Cr. 626, 103 Pac. 873. The Criminal Court of Appeals has said (Cochran v. State, 4 Okla. Cr. 390, 111 Pac. 978) that:

"Where such remarks are made, and it is clear that they could not have injured the defendant, they will not constitute ground for a new trial."

An examination of the record showing the former testimony of the witness reveals that the court's remarks were in all respects true. There was no opposition in her testimony upon this point, and no reasonable ground for contending that there was. The remark of the court did not go to any question of fact which, under the record, could be before the jury for determination. He did not indicate that he believed her testimony upon any point to be true or untrue. He did not express confidence in the credibility of the witness, or indicate his opinion as to any of the merits of the case. Under such circumstances, we think the remarks made ought not to be held to constitute error. First National Bank v. Yoeman, 17 Okla. 613, 90 Pac. 412; Morgan v. Coleman, 139 Ga. 459, 77 S. E. 579, Norfolk, etc., Co. v. O'Neill, 109 Va. 670, 64 S. E. 948.

The next assignment relates to an instruction in which the court told the jury that:

"When one with full knowledge allows another to represent him as his agent and remains silent when occasion arises for him to speak, he may be held as principal."

There was no testimony upon which to base an instruction of this sort, and it should not have been given. Was it prejudicial? This court has frequently said that the giving of an instruction which correctly states an abstract principle of law, but which is inapplicable to the facts, is error, but we have variously held that such an instruction was not prejudicial "unless it is apparent that such instruction misled the jury" (Chickasha Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166; Pearson v. Yoder, 39 Okla. 105, 134 Pac. 421, 48 L. R. A. [N. S.] 334, Ann. Cas. 1916A, 62; Weller v. Dusky, 51 Okla. 77, 151 Pac. 606); that giving such an instruction is prejudicial when it is "calculated to mislead the jury" (C., R. I. &. P. R. Co. v. Beatty, 42 Okla. 528, 141 Pac. 442; Obenchain & Boyer v. Roff, 29 Okla. 211, 116 Pac. 782); when it will "probably tend to confuse the jury" (St. L. & S. F. R. Co. v. Bruner, 56 Okla. 682, 156 Pac. 649); when it is "strongly calculated to confuse and mislead the jury" (Kingfisher Nat. Bank v. Johnson, 22 Okla. 228, 98 Pac. 343); when it appears that "the jury were misled thereby" (Oklahoma Portland Cement Co. v. Brown, 45 Okla. 476, 146 Pac. 6), etc. The sum of all these expressions is that the instruction is prejudicial when we can fairly say that its necessary effect upon the jury was such that in the language of the statute (section 6005, Rev. Laws 1910) it "probably resulted in a miscarriage of justice." Whether or not the instruction had such effect must necessarily be determined by this court, according to our best judgment, upon the whole record in each particular case and each case will largely stand as a determination only of itself. As was said by the Criminal Court of Appeals in Dooling v. State, 3 Okla. Cr. 491, 106 Pac. 982:

"An instruction harmless in one case may be prejudicial in another, depending upon the facts of each case."

In the case at bar the connection in which the language used was given—as a part of a long instruction—in fact the whole record leads us to conclude that the giving of this instruction was not prejudicial.

The same reasoning applies to an instruction upon exemplary damages, for which there was no foundation in the evidence. It is clear from the record that plaintiff suffered an impacted fracture of the thigh bone; that he was confined in a hospital for a long period with his leg in a cast, with weights suspended therefrom; that he suffered such pain that he was kept for many days largely under the influence of opiates; that he had incurred bills of considerable size for doctors, fees, medicine, and hospital fees; that his leg was permanently shortened about two inches, that he was compelled, because of the injury, to give up a position paying $100 per month, and had changed his occupation. The verdict was for $1,800.

Assuming that he was entitled to recover at all—and this was in this case a question of fact and for the jury to determine—we cannot say that there is even a probability that exemplary damages were included in a verdict of this amount; unless we can so say the instruction was not prejudicial. Many of the authorities sustaining the view we take here are collected by Mr. Justice Turner delivering the opinion of this court in Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30, and the principles there adduced are reiterated in Planters' Cotton & Ginning Co. v. Penny, 53 Okla. 136, 155 Pac. 516. It is unnecessary for us further to review them.

The next assignment of error relates to the following instruction:

"If you find from the evidence in this case that the party, Albert Brownell, had acted as agent for his father previous to the alleged injury, and shortly after said alleged injury he began to act for his father again in carrying on the livery and transfer business, you may look to all these as well as to all other surrounding circumstances to determine as to whether or not the said Albert Brownell was really acting for his father at the time of the alleged accident, and among these circumstances you may look to see as to where and how he got his information and what phone was used, if any, and whose team he used, and from what place said team was taken, as well as any and all circumstances appearing in the evidence."

To this instruction counsel object upon the ground that the fact that Albert Brownell was formerly in the employ of the defendant does not tend to show that he was his agent at that time. It is too remote, too speculative; evidence of a foreign fact not within the issues. And even if evidence of such former employment was admissible, its only effect was a remote inference or presumption, and the inference or presumption could not be indulged in the face of the positive evidence that Albert Brownell was not the agent of the defendant on the day of the injury or in the transaction in question. Counsel cites in support cases holding that evidence of similar transactions as principal and agent long before the particular event involved, and evidence of isolated acts of agency not connected with the transaction in ques-

tion, is not admissible to establish agency, especially where positive evidence is available. In this case, however, the proof of both parties showed that Albert Brownell was driving in the transfer business for his father up until about ten days before the injury to plaintiff, and that he was in the same employment a short time after the injury. His alleged agency upon the day of the injury was the very fact in controversy. To say that because one witness or a dozen positively denied the agency on the particular day involved, the opposite party was thereby precluded from showing facts and circumstances to disprove such positive testimony is, we think, beyond the range of reason. Positive, direct testimony as to the authority of employment of an agent is generally available only to the alleged principal and agent. As a general rule, they are the only ones who can testify positively to the arrangement, or lack of arrangement, between them, but the facts and circumstances regarding and surrounding the acts and conduct of such parties are available to the opposite party. If he be denied the right to produce evidence of such facts and circumstances, he is entirely at the mercy of his adversary, the alleged principal, who, with the alleged agent, alone can swear positively as to the existence or nonexistence of the employment. The law gives a party, therefore, the right to show acts and conduct tending to establish agency, but limits the extent of testimony of that character to acts and conduct in relation to transactions of the same nature as that involved and reasonably proximate in time to the transaction involved in the cause being tried. The cases cited by counsel consider, as above stated, acts held to be too remote. Had the evidence in this case been confined to showing that Albert Brownell once drove a hack for his father a year or so before this accident the cases cited would have been applicable and the testimony incompetent. But where a general course of employment in the same business as that in controversy in the action up to within a short time before and commencing again a short time after the accident, is shown, supplemented by acts and conduct upon the very day of the accident tending to show a continuance of that same general employment, then we think such testimony all becomes competent and material, and was properly defined in the court's instruction. That Albert Brownell drove a buggy upon the day of the accident instead of a hack or automobile we regard of little importance, for the reasons given under our previous discussion in relation to the apparent scope of authority of Mrs. Brownell. Cases of this sort are not infrequent. Greenleaf says (volume 2, section 65):

'The most numerous class of cases of agency is that which relates to affairs of trade and commerce where agency is proven by inference from the habit and course of dealing between the parties."

Mr. Wigmore has given a very able discussion of the principles applicable to the class of evidence here involved. He says (Wigmore on Evidence, section 375) that of the modes "of evidence circumstantially a human quality or condition, two only are practically here available, namely, specific instances of conduct, exhibiting the habit or custom, and the prior or subsequent existence of it" (section 376):

"In general, when habit of conduct is to be evidenced by specific instances, there is no reason why they should not be resorted to for that purpose. The only conditions are: (a) That they should be numerous enough to base an inference of systematic conduct; and (b) that they should have occurred under substantially similar circumstances so as to be naturally accountable for by a system only, and not as casual recurrences. As to the first condition convenience requires that the discretion of the trial court should control in order to avoid the objection of unfair surprise and confusion of issues. * * * As to the second condition, it may be said that the courts are apt to require too much, ruling often as if it were their function to require incontrovertible demonstration from each piece of evidence, instead of merely to declare it relevant to be considered by the jury."

The principles are applicable to proof of agency (section 377—1). So, too, he says (section 382):

"It has already been seen that the prior subsequent existence of a quality or condition is evidential of its existence at a given time. * * * The prior or subsequent existence of such fact is always evidential to show its existence at a time in issue, upon the general experience that such facts involve a human attitude more or less continuous and permanent."

Without entering into a discussion of the many cases from the different states upon the subject, it is sufficient to refer to Ricker Nat. Bank v. Stone, 21 Okla. 833, 97 Pac. 577; St. Louis Cordage Mills v. Western Supply Co., 54 Okla. 757, 154 Pac. 646; Wrought Iron Range Co. v. Leach, 32 Okla. 706, 123 Pac. 419, and Reeves Co. v. Phillips, 53 Okla. 375, 156 Pac. 1179, where it was held generally that:

"The apparent authority of an agent is to be gathered from all the facts and circumstances, and is a question of fact for the jury."

And in Reed v. Scott, 50 Okla. 757, 151 Pac. 484, where this court said:

"A jury may, if they so decide, accept circumstantial evidence upon one side, and reject positive testimony presented on the same point by the other side."

Having determined that the evidence referred to in the instruction was admissible to prove agency, it must follow that, there being conflict upon that point, the court did not err in submitting the question of agency to the jury and in advising them that they might consider such facts and circumstances in determining the existence or nonexistence of the agency.

It is next contended that there was error in the admission of testimony tending to prove that Albert Brownell had been fined for automobile speeding, and had an automobile accident subsequent to the accident here in question. The testimony of which complaint is made is not set out in the brief, and we are not therefore required to search the record to discover it. Rule 25 [38 Okla. x, 137 Pac. xi] and numerous decisions of this court.

Other errors are alleged, but, owing to the necessary, but regrettable, length of this opinion, we dispose of them by saying that we have examined each and find no reversible error.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.