### DANDOIS v. RAINES et al.

No. 15292—Opinion Filed Sept. 8, 1925.

Rehearing Denied Dec. 1, 1925.

**1. Principal and Agent—Proof of Agency by Circumstancial Evidence.**

Circumstantial evidence is ordinarily competent to establish the fact or extent of an agency. Where such evidence is resorted to for the purpose of establishing agency, all the facts and circumstances showing the relation of the parties, and their treatment of each other, and throwing light upon the character of such relation, are admissible in evidence.

**2. Same—Question for Court or Jury.**

The question of agency when made an issue in a case is a question of fact to be determined in law actions by the jury and in equity actions by the court, from all the facts and circumstances connected with the transaction, and like any other question of fact, may be proved by circumstantial evidence.

**3. Trial—Sufficiency of Instructions—Refusal of Requests.**

Where a court instructs the jury clearly, fairly, and fully upon every material phase of a case, it is not error to refuse to give any and all requested instructions.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; Mac Q. Williamson, Special Judge.

Action by Charles S. Dandois against Joseph Raines et al. Judgment for defendants, and plaintiff appeals. Affirmed.

This suit grows out of the failure of Aurelius-Swanson Company, Inc. The facts, as disclosed by the record, are, that on the 1st day of April, 1916, Aurelius-Swanson Company loaned to the defendant Joseph Raines $1,000, and Raines executed a note for said amount and a loan on his home in Pauls Valley. On the 29th day of April, 1916, Aurelius-Swanson Company, Inc., sold and transferred this note and mortgage to Charles S. Dandois and executed an assignment of the mortgage to said Dandois. Dandois did not place the assignment of the mortgage on record, and Raines paid the interest as it came due to Aurelius-Swanson Company, as he had no notice that the note and mortgage had been transferred. The record shows a lot of correspondence between Aurelius-Swanson Company and Dandois. The record shows that when the interest coupon came due, Raines would remit to Aurelius-Swanson Company, and Aurelius-Swanson Company would remit to Dandois, and he would return the coupon to Aurelius-Swanson Company, and they in turn would return it to Raines. A little while before the principal note came due, Dandois wrote to Aurelius-Swanson Company the following letter:

"Manila, P. I., December 27, 1920.
"The Aurelius-Swanson Mort. Co.,
"Oklahoma City, Okla.

"Gentlemen:—Enclosed find coupon No. 2095 on Raines mortgage.

"This mortgage is due April 1, 1921, within a few days I will return the Raines mortgage—requesting you to reinvest same in something—with as high a rate of interest as possible—you stated a few days ago that 8% could be obtained now on absolutely secure loans. I have some uninvested funds but exchange on New York is now quoted at 12% so must wait for a more favorable time to remit fund; which would be some time in March or April. Could handle an additional $1,000 then I think. Let me know what you can do on the above.

"Yours very truly,
"Chas. S. Dandois."

And on February 17, 1921, Aurelius-Swanson Company replied to said letter as follows:

"February 17, 1921.
"Mr. Chas. S. Dandois,
"c.o. Bureau of Public Works,
"Manila, P. I.
"Dear Mr. Dandois:
"We are in receipt of your kind favor

of January 27th for which we wish to thank you. Also for the coupon that you enclosed.

"We further note that you wish to reinvest the proceeds of the Raines mortgage when it matures April 1st.

"Kindly send us all papers in this loan and we will see that the amount is reinvested in an excellent loan netting 8% interest.

"We agree with you that you could not afford to send money to the United States at a rate of 12% exchange on New York. When times are more favorable we will be glad to invest this money for you.

"Thanking you for your letter and assuring you we appreciate the business you have given us, beg to remain,

"Very sincerely yours,

"President."

The following letter from Aurelius-Swanson Company to Dandois is the form of letter used by Aurelius-Swanson Company in remitting to Dandois:

"Aurelius-Swanson Company
"Mortgage Loans and Investment.

"Tenth Floor First National ,Bank Building
"Oklahoma City, Okla.

"Mr. Chas. Dandois, c/o Bureau of Public Works, Manila, P. I..

"Dear Sir:

"Enclosed you will find remittance for $35 in payment of interest coupons on loans held by you.

| "No. | Borrower | Maturity | Amount |
|------|----------|----------|--------|
| "2095 | Jas. Raines | Oct. 1, 1920 | $35.00 |
| "Enc. Ck. | | New York | $35.00. |

"If remittance is found correct and you have not already done so, Kindly forward coupons at your earliest convenience.

"Yours truly,

"Aurelius-Swanson Mortgage Co."

And the following letter from Dandois to Aurelius-Swanson Company will show Dandois' manner of replying or accepting receipts:

"The Government of the City of Baguio,
"Baguio, P. I.

"November 24, 1919.

"The Aurelius-Swanson   Co.
"Okla. City, Okla.

"Gentlemen:

"Enclosed find note No. 2095 on Raines mortgage due Oct. 1, 1919, for which I accept your New York check. Many thanks for promptness.

"Respectfully,

"Chas. S. Dandois."

There are a large number of these letters in the record, and about March 1921, just before the principal note was due, a man by the name of Henderson, who formerly lived in Pauls Valley and who was at that time working for Aurelius-Swanson Company, went to Pauls Valley to see Raines about the payment of the principal note and arranged wiith Raines to renew the note for another five-year period; and on March 11, 1921, Aurelius-Swanson Company wrote to Raines the following letter:

"March 11, 1921.

"Mr. Jos. Raines,

"233 North Oak St.,

"Pauls Valley, Okla.

"In Re Loan No. 2095.

"Dear Joe:

"We are enclosing you herewith renewal papers on your home place, for a period of 5 years, written at 7-2-2 payable in 4 notes, semi-annually.

"Please sign these papers before a notary public and return at your earliest convenience.

"Thanking you for your attention to this matter, we are,

"Yours very truly,

"Aurelius-Swanson Mtg. Co.

"By——————————"

And on July 1, 1920, Aurelius-Swanson Company wrote the following letter to Joseph Raines:

"July 1st, 1920.

"Mr. Joe Raines,

"223 N. Oak St.,

"Pauls Valley, Okla.

"In Re: Loan No. 2095—Raines.

"Dear Sir:

"In looking over our insurance records we find that your policy of $1,500 held by us in connection with your loan expired on April 26, 1919, and 'do not find where we have been furnished with new policy to replace this insurance.

"If you have had this written, kindly forward same to us to be placed with the balance of the loan papers.

"Yours very truly,

"Aurelius-Swanson   Mortgage   Co.,

"HVS—:S.                    Ass't. Mgr."

The foregoing correspondence is sufficient to show the course of dealings between the parties.

On the 12th day of March, Raines and wife executed a renewal note and mortgage to Aurelius-Swanson Company and delivered

it to Aurelius-Swanson Company on the 31st day of March, 1921.

Aurelius-Swanson Company, instead of sending this renewal note and mortgage to Dandois, sold it to Jennie F. Crull of Rockford, Ill. Raines did not learn until something over a year after the renewal note and mortgage was given that the same had not been applied to the satisfaction of the note given five years before. He first received notice that that note and mortgage had not been paid through a bank in Chicago. He had been paying the interest coupons to Jennie F. Crull, as Miss Crull notified him as soon as she bought the renewal note and mortgage that she was the owner and called his attention to the assignment of same on record in Garvin county. When Raines sent the renewal note and mortgage to Aurelius-Swanson Company, he asked that they return the original note and mortgage, but they put him off with one excuse and another until they went into bankruptcy.

As soon as Raines got notice that Dandois was claiming to hold the original note and mortgage unsatisfied, he commenced suit to cancel the original note and mortgage on the ground that the same had been paid by the renewal, and a day or two thereafter Dandois commenced suit to foreclose the original note and mortgage, and Jennie F. Crull intervened. On the trial the cases were consolidated. The case was tried to the court and a jury and a verdict was returned in favor of Jennie F. Crull and against Dandois, and after unsuccessful motion for new trial, the case was appealed to this court, with petition in error and case-made attached.

Wilson Tomerlin & Threlkeld and H. G. Butts, for plaintiff in error.

Bowling & Farmer and C. H. Thomason, for defendants in error.

Opinion by MAXEY, C. This case turns largely on the question of whether Aurelius-Swanson Company was the agent of Dandois in the collection of the interest notes and the taking of the renewal note and mortgage taken to satisfy the original note and mortgage held by Dandois. The correspondence between Aurelius-Swanson Company and Dandois shows that Aurelius-Swanson collected all of the interest coupons and remitted the money to Dandois and Dandois sending them the coupon note. It appears from the evidence of Raines, the defendant, that he did not know Dandois in the transaction at all; that the original note and mortgage was given to Aurelius-Swanson Company,

and that he never received any notice from Dandois or anyone else that the note had been transferred by Aurelius-Swanson Company to Dandois. Raines testifies that he presumed that Aurelius-Swanson still held the note and mortgage. When Dandois bought the note and mortgage about the 29th of April, 1916, he put them away in a safety deposit box in the city of Manila, P. I.; and did not disturb them except to send Aurelius-Swanson Company the coupon or interest note when they remitted the interest. There is no contention that Dandois ever notified Joseph Raines in any way that he was the owner of the note and mortgage or that Raines ever knew that he was the owner until something like a year after he had given the renewal note to take up the old note and mortgage. He then learned through a bank that they held the old note and mortgage for collection. Dandois must have depended on Aurelius-Swanson Company to look after the collection of the interest and principal when it came due, because he did not notify Raines that he was the owner of the note and mortgage and ask him to remit the interest to him, but let Raines think that the note and mortgage still belonged to Aurelius-Swanson Company.

The letter of December 27, 1920, set out above in the statement of the case, shows that Dandois was sending to Aurelius-Swanson Company the coupon note and stating therein that he would send the principal note and mortgage to him in a few days and wanting it reinvested in something good, etc.

It is complained by plaintiff in error that this correspondence between Dandois and Aurelius-Swanson Company was not admissible to prove agency, because Raines never knew of this correspondence. With this contention we cannot agree. The correspondence was admitted to show the relation and course of dealing between Dandois and Aurelius-Swanson Company. It is true that Raines did not know of this correspondence at the time, and of course he did not act on it. But when the question of agency is an issue in the case, the dealings between the principal and the alleged agent are proper to go to the jury as circumstances tending to show agency. The cases of Holmes v. Halstid, 76 Okla. 31, 183 Pac. 969; Reed v. Robinson, 83 Okla. 68, 200 Pac. 773: Brownell v. Moorehead, 65 Okla. 218, 165 Pac. 408, all sustain the proposition that the question of agency and the extent of agent's authority are to be determined by the jury upon all the facts and circumstances con-

nected with the transaction under proper instructions as to the law.

We think under the foregoing rule that all of the correspondence between Dandois and Aurelius-Swanson Company was properly admitted as circumstances from which the jury might determine whether or not Aurelius-Swanson Company was the agent of Dandois. That is especially true when you consider the letter written from Manila, P. I., December 27, 1920, wherein Dandois is sending the Aurelius-Swanson Company a coupon for the interest, and also in the same letter calling attention to the fact that the mortgage and note will be due April 1, 1921, and that within a few days he would return the Raines mortgage to Aurelius-Swanson Company requesting it to re-invest same at as high rate of interest as possible, and also stating that he had some other uninvested funds that he would want him to invest for him and he would send that to Aurelius-Swanson as soon as the rate of exchange on New York was reduced. This entire letter impresses one with the fact that Aurelius-Swanson Company was the general agent for Dandois in the transaction of his business in Oklahoma. Mr. Dandois' deposition was taken and he was not asked the question nor did he state in his deposition whether he had any other agent in Oklahoma handling his business, other than Aurelius-Swanson Company. The fact is that Mr. Dandois' deposition was taken on interrogatories and they were so framed that he answered "No" to nearly every interrogatory. This is not like the case, if Raines had known that Dandois had bought the note and mortgage, because they had kept Raines in the dark about Dandois' owning the note and mortgage and left him to believe that the note and mortgage was still held by Aurelius-Swanson Company as it was originally executed.

We think there was no error in the admissibility of this testimony, and we think the jury was justified in reaching the conclusion that Aurelius-Swanson Company was the actual agent for Dandois in the transaction of his business in Oklahoma. Just whether Dandois sent the note and mortgage to Aurelius-Swanson Company soon after writing the letter of December 27, 1920, or not, the record does not disclose. It will be noticed in Aurelius-Swanson Company's reply to Dandois' letter of December 27th, that Aurelius-Swanson Company noted that Dandois wished to reinvest the proceeds of the Raines mortgage when it matured. It is insisted that this correspondence is not

enough to constitute Aurelius-Swanson Company the agent of Dandois for the purpose of re-investing the money to be derived from the Raines note and mortgage. But we are not prepared to say that it was not sufficient. It was certainly proper to go to the jury as a circumstance. It appears that these letters introduced in evidence were procured by Raines or someone else for him after Aurelius-Swanson Company went into bankruptcy, and just whether they got all of the correspondence is not clear. Another thing that is hard to reconcile, and that is, that Dandois waited over a year after the note and mortgage held by him became due before he notified Raines that it had not been paid, and then notified him through a bank.

Counsel for plaintiff in error complains that the court erred in refusing to give a set of instructions prepared by plaintiff numbering from 3 to 11. The first of these instructions was No. 1, which asks the court to instruct the jury to find for the plaintiff for the amount sued for. We think this instruction was properly refused under the testimony in this case. The other instructions requested by plaintiff were properly refused, for the reason that the instructions given by the court, in our judgment, cover the law of the case; and we do not think it was error to refuse to give the instructions requested by plaintiff. Plaintiff did not except to any instructions given by the court.

In the case of Engelkemeier v. Lillis, 54 Okla. 282, 153 Pac. 877, this court states the rule as follows:

"Where a court instructs the jury clearly, fairly, and fully upon every material phase of a case, it is not error to refuse to give any and all requested instructions."

Counsel for the respective parties have ably briefed this case, and so far as we have been able to find, they have collated the applicable authorities in the case. Counsel also argued this case orally before this division, but their argument was confined principally to the same argument made in the briefs.

We have given the briefs careful consideration and gave the oral argument careful consideration, and while there were other points discussed, both in the briefs and the oral argument, we have not noticed them, for the reason that under our view of the law, it is unnecessary to discuss them. We think, under the facts in this case, that Aurelius-Swanson Company was the agent of Dandois in the transaction of his business

in the state of Oklahoma. He was located in the Philippine Islands. Raines, the mortgagor, was located in Oklahoma. Aurelius-Swanson procured the loan from Raines, took the note and mortgage in controversy, and sold it to Dandois. Aurelius-Swanson collected the interest coupons as they came due, and would send with their notice to Raines that the interest coupons of a certain date would be due at their office on that date and urge him to be prompt in payment. Raines was prompt and always had the money there by the due date. Aurelius-Swanson Company would remit the money for the coupon to Dandois and Dandois would return the coupon to Aurelius-Swanson, and they would deliver it to Raines. No one else represented Dandois in these transactions except Aurelius-Swanson. Raines testified when he was on the stand that he did not know Dandois was in the transaction until nearly a year after the principal note came due, and then received notice through a bank that Dandois claimed to have the note. It is urged by plaintiff in error that the indorsement of the coupon notes to Dandois was sufficient notice to Raines that Dandois was the owner. Raines, however, says that he never noticed the indorsement on the coupon until his attention was called to it on the witness stand. We cannot see that the fact that the coupons showed they were payable to Dandois could cut any figure in the question of agency. In our judgment it would rather strengthen the contention that Aurelius-Swanson Company was Dandois' agent. Dandois was on the witness stand and could have explained who his agent was in Oklahoma, but he did not do so, and in our judgment, in view of the correspondence between Dandois and Aurelius-Swanson Company, Dandois had no other agent in Oklahoma except Aurelius-Swanson Company.

Upon the whole case, there was no error committed by the trial court, and we recommend that the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 944, §708. (2) 2 C. J. pp. 944, §708, 960, §731, 962, 733. (3) 38 Cyc. p. 1711, See under (1, 2)) 21 R. C. L. pp. 820, 822; 4 R. C. L. Supp. pp. 1431, 1432.