## WELLS et al. v. MAYER.

No. 28677. May 31, 1939.

Rehearing Denied June 27, 1939.

W. L. Coffey and A. Langley Coffey, for plaintiffs in error.

John Barry and S. J. Clay, for defendants in error.

WELCH, V. C. J. This is a suit for damages for personal injury. The cause was tried to a jury.

It is urged here that the trial court. erred in overruling defendants' demurrer to the evidence, and that the verdict is not sustained by the evidence.

Plaintiff was a customer of the El Cantino Bar, and upon inquiry of the bartender of the location of the men's toilet, was directed to the rear of the establishment. In following the directions he fell down an unlighted stairway and was injured.

The argument upon appeal is to the effect that these defendants were not the operators of the bar at the time of the injury. The question presented is one of agency.

The facts which are not in dispute are that the defendants are the owners of the Wells-Roberts Hotel Building in Oklahoma City. They own and operate the hotel, including the coffee shop just off the main lobby of the hotel. At the times involved the El Cantino Bar was housed within such building, and also just off the hotel lobby, with means of entrance thereto from the lobby. That the bar was under the active supervision, management, and control of one Bromley, and a young man by the name of Spencer was employed by Bromley as an attendant. Spencer is the person who directed plaintiff to the toilet.

The defendants deny that they were the owners and operators of the bar, and claim that that portion of the building was leased by Bromley, and that the bar was owned and operated by him wholly free from any ownership, interest, control, and supervision of the defendants, and they introduced evidence in support of such claims.

On the contrary, the plaintiff claims that the bar was being operated by the defendants, by and through Bromley and Spencer, as their agents and employees.

We are thus called upon to determine whether there is sufficient evidence on the question of agency to present that issue to the jury, and whether the same is sufficient to support the verdict.

Plaintiff's evidence on that question consisted of an uncontradicted showing that the defendants were the holders of a retail federal liquor license, a state retail beer license, and that Bromley had neither, although he was the active manager of the establishment in question, where beer was dispensed at retail. A state beer license was posted upon the bar, though to whom issued is not shown; the defendants did not dispense beer at any place admittedly under their control and management.

One of plaintiff's attorneys gave the following testimony:

"Q. After you were employed, did you discuss the matter with Mr. Wells, one of the defendants in this case? A. I did. Q. Did you tell him the nature of the complaint that your client, Mr. Mayer, was making? A. I did. Q. After you had advised him what the facts and circumstances were as you contended or understood to exist, did he call and interview the bartender that was operating the beer parlor on the

night in question? A. He did, but if I may explain there, before going into that, I called Mr. Wells over the 'phone and told him that I had been employed in this case, and called him and talked with him over the 'phone, I told him I had been employed to represent Mr. Mayer in this case and that I would like to come around and talk with him. He said, 'Come on.' I then went down and I was conducted to his private office. Now, just who conducted me in there I do not remember. I had a conversation with Mr. Wells at that time. Mr. Wells asked me to give him a little time to look into it and he would get in touch with me later. That conversation that I had with him, I believe, was in the morning, and then late that afternoon or the following morning I called him and went back to his private office at the Wells-Roberts Hotel and held another conversation with him. Then that same day Mr. Wells, in discussing this case, while we were talking, discussing it, came to my office in the Perrine Building to go into it further. I believe that was the day after my first visit to his office. Then, the next morning I went back to his office upon his request and at that time had another conference and conversation concerning the same. Q. Was it in that conversation or conference that he called the bartender in? A. He did. Q. Did he have a conversation in your presence with the bartender? A. He did. Q. Did he state to the bartender anything with reference to who the beer parlor was run by? A. Yes, sir. Q. What did he say? A. I might qualify that answer by stating that on my first visit to his office, I had the information from my client, but I wanted to ascertain his position, and asked him who he had working in the beer parlor at the time, and he said a young man, and called his name, but I have forgotten the name now. Then, on the last conversation I had with Mr. Wells in his office, Mr. Wells made the statement to me concerning what the bartender told him about it, as to the condition they claimed Mr. Mayer was in at the time of his accident when he fell down the stair, and that was, they claimed he was drunk. I said, 'Would you mind my talking to your man?' He sent for him, and when the young fellow came in Mr. Wells made this statement to him, calling him by his name, he said: 'You have been working for me, now for sometime. I want you to tell Mr. Clay exactly how this thing occurred.' And then the young man went into the facts of it."

Mr. Wells denied that he made the statement to the attendant which is attributed to him in the above testimony.

We conceive the applicable rules herein to be as stated in paragraphs 2 and 3 of the syllabus in Iowa Dairy Separator Company v. Sanders, 40 Okla. 656, 140 P. 406, as follows:

"Where the facts upon the question of agency are controverted, it becomes an issue to be determined by the jury from all the facts and circumstances.

"If there is any testimony reasonably tending to support the verdict of the jury, and the verdict has been approved by the trial court, the judgment will not be disturbed on appeal."

And in paragraph 10, of the syllabus in Brownell v. Moorehead, 65 Okla. 218, 165 P. 408, as follows:

"Proper circumstantial facts tending to prove the existence of an agency being in evidence, and the agency being denied, the trial court was not in error in submitting the question of the existence of the agency to the jury, and in instructing them that they might take such facts and circumstances, as well as those surrounding the particular transaction, into account in determining whether or not an agency existed."

It is our view that the evidence concerning the ownership and operation of the building and hotel with public entrance to the bar from the hotel lobby, coupled with the holding by defendants of license to dispense beer at retail with no other explained use, and the active operation of the bar by one not the holder of such license, together with the above-quoted testimony, is competent here, and that all of same is sufficient to submit the question of agency to the jury, and sufficient to reasonably tend to support the verdict rendered.

Complaint is made of the conduct of one of plaintiff's attorneys (Mr. Clay) in giving testimony in behalf of his client, especially in view of his admitted employment on a contingent fee basis. We do not think that the authorities cited are sufficient to justify our concluding in this case that such testimony is incompetent. The question of the weight to be given same was, in this case, a matter for the consideration of the jury. We quite agree that such action on the part of attorneys should be carefully avoided if reasonably possible, but we find no place herein for a further consideration of such complaint.

In view of the briefs in this cause, we feel that we have sufficiently treated the questions presented.

The judgment is affirmed.

Our attention is called to the fact that Central Surety & Insurance Corporation has executed a supersedeas bond in the sum of

$3,000, which is incorporated in the case-made. Therefore judgment is hereby rendered against said corporation upon such bond for the full amount of the judgment, interest, and costs herein involved, not exceeding, however, the total sum of $3,000; execution to issue out of the district court of Oklahoma county.

BAYLESS, C. J., and GIBSON, DAVISON, and DANNER, JJ., concur.